**In re SHELL OIL REFINERY.**

**Robert ADAMS, Sr.**

**v.**

**SHELL OIL COMPANY.**

**Civ. A. Nos. 88–1935, 88–2719.**

United States District Court,
E.D. Louisiana.

Aug. 14, 1992.

As Amended Nov. 3, 1992.*

---

* Editor's Note: The Court's amending order, filed November 3, 1992, will be published in a subsequent advance sheet.

John J. Cummings, III, Liaison Counsel, Cummings, Cummings & Dudenhefer, New Orleans, La., for plaintiff.

Thomas J. Wyllie, Adams and Reese, New Orleans, La., for Shell Oil Refinery.

James F. Holmes, Christovich & Kearney, New Orleans, La., for Brown & Root U.S.A., Inc.

## ORDER AND REASONS

MENTZ, District Judge.

This class action suit arises from the May 5, 1988, explosion at Shell Oil Company's refinery in Norco, Louisiana. The Court addresses here the issues raised by the Plaintiffs' Legal Committee's (PLC) *ex parte* contact with an unidentified employee of Shell Oil Company.

The facts regarding the contact are not entirely known. Based on the nature of certain questions asked by the PLC at depositions and other PLC discovery requests, it became clear that the PLC had possession of Shell documents that were not obtained through the discovery process. The PLC does not dispute this fact and admits that it obtained information and Shell documents from a current Shell employee. The name of the source and his position at Shell are unknown, but there is no question that he is not one of the employee-plaintiffs in this suit.

After learning about this security leak, Shell filed a motion to compel answers to two interrogatories seeking identification of all documents written by Shell or received by Shell and obtained by the PLC through means other than the discovery process, and the identity of the person who provided the PLC with those documents.[1] This Court ruled that the identity of the source of the documents was not relevant, and after reviewing the documents *in camera*, ordered production of the documents. Subsequently, Shell filed a motion seeking reconsideration of whether it may learn the identity of the PLC's source, and the PLC filed a motion for reconsideration of the order requiring them to produce the documents. After carefully considering the law, the parties' briefs, and the record, the Court will stand by its original decision with one modification for the reasons set forth below.

Shell contends that it needs to know the identity of the PLC's source to determine whether an *ex parte* communication in violation of Louisiana Rule of Professional Conduct, Rule 4.2, has occurred because such a violation would threaten the integrity of this proceeding and may involve an invasion of the attorney-client relationship. Rule 4.2 states as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer, or is authorized by law to do so. A lawyer shall not effect the prohibited communication through a third person, including the lawyer's client.

In applying this rule to corporations, there are three categories of employees that an attorney should treat as parties for the purposes of the rule: (1) employees with managerial responsibility; (2) employees whose acts or omissions concerning the subject of the representation may be imputed to the organization for liability purposes; and (3) employees whose statements

---

**1.** *Interrogatory No. 1:*

Please identify all documents, written or originated by Shell, or any employee or agent of Shell, which have been obtained by the Plaintiffs' Legal Committee, or any member thereof, through sources other than Shell's responses to discovery and the formal discovery processes instituted in this litigation; and with respect to each, please identify by name, address, and telephone number, the person or persons who provided the PLC with each such document and the name of the PLC member who first received each such document referenced herein.

*Interrogatory No. 2:*

Please identify all documents, received by Shell from outside sources, but not written or originated by Shell, or any employee or agent of Shell, which have been obtained by the Plaintiffs' Legal Committee, or any member thereof, through sources other than Shell's responses to discovery and the formal discovery processes instituted in this litigation; and with respect to each, please identify by name, address, and telephone number, the person or persons who provided the PLC with each such document and the name of the PLC member who first received each such document referenced herein.

may constitute admissions on the part of the organization. *See* Model Rules of Professional Conduct, Rule 4.2, comment.

The PLC denies that they have had *ex parte* communications with any employee of Shell who is a "party" within the meaning of Rule 4.2. An affidavit from a member of the PLC states that

> [h]e was contacted by an attorney who advised him that his client, a current Shell Oil Company employee, wanted to speak to a member of the Plaintiffs' Legal Committee. His client believed that Shell and/or its counsel was intentionally concealing facts from and/or intentionally misleading and misdirecting the Plaintiffs' Legal Committee with regard to its discovery efforts. Affiant, before initiating any communication with this Shell employee, verified that he/she did not hold a managerial position and was not an individual whose actions or non-actions would visit liability on Shell Oil Company.

■ The PLC may or may not have been entitled to discuss the case with this Shell employee. Informal interviews with employees of a corporate party can in certain circumstances be entirely appropriate. For example, under Rule 4.2 a low level employee whose conduct or scope of employment was not involved in the disputed events could be interviewed *ex parte* by adverse counsel. If the PLC's contact with the Shell employee had been limited to an interview, the Court's analysis would focus on whether the communication was with a "party", as defined by Rule 4.2. The problem here is that the PLC has not just communicated with a Shell employee, but has surreptitiously obtained from this employee proprietary documents belonging to Shell.[2] Regardless of whether the PLC's communication with the Shell employee was in violation of Rule 4.2, the PLC's receipt of Shell's proprietary documents in this manner was inappropriate and contrary to fair play.

The receipt of Shell's documents was more than informal fact-gathering. The PLC has effectively circumvented the discovery process and prevented Shell from being able to argue against production.

Had the PLC sought to obtain these documents through the discovery process, Shell would have had the opportunity to seek a protective order pursuant to the Federal Rules of Civil Procedure.

■ Federal courts have authority to remedy litigation practices that threaten judicial integrity and the adversary processes. Indeed, the "district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *Musicus v. Westinghouse Electric Corp.*, 621 F.2d 742 (5th Cir.1980). "The role of the district court in enforcing the Rules [of Professional Conduct] is a limited one, however, and unless an attorney's questionable conduct threatens to taint the litigation pending before the court, 'the business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here.'" *MMR/Wallace Power & Industrial, Inc. v. Thames Assoc.*, 764 F.Supp. 712 (D.Conn.1991). *See also Dondi Properties Corp. v. Commerce Savings and Loan Assoc.*, 121 F.R.D. 284, 290 (N.D.Tex.1988).

■ The only remedy Shell seeks is to learn the identity of the documents and the PLC's source. Neither Shell nor the PLC cited any cases discussing the identity of a person leaking documents to the opposing party in a civil suit. The Court is aware of one such case where a district judge required a party to reveal the identity of his source. *Kearns v. Ford Motor Co.*, 114 F.R.D. 57 (E.D.Mich.1987). In *Kearns*, the court examined the facts regarding how the party obtained the documents as part of its fact-finding prelude to a finding of contempt of court and imposition of monetary sanctions.

In the case at bar, learning the identity of the source of these documents is not necessary to remedy any unfair advantage gained by the PLC. The Court is not concerned with Shell's internal problems—whether a Shell employee has breached his confidentiality agreement, how he obtained the documents, or why he is giving them to the PLC. The Court is concerned with preserving the integrity of this judicial proceeding. What matters is balancing the

---

**2.** The proprietary nature of many of the documents at issue was apparent when the Court examined them *in camera* on the original motion to compel.

scales. That can be done by prohibiting the PLC from making any use of the documents, requiring the PLC to identify and produce the documents to Shell, and prohibiting the PLC from any further *ex parte* contact with any Shell employees other than those who are plaintiffs in this suit. That Shell may learn the identity of the source once it reviews the documents and perhaps retaliate against the employee is not this Court's concern.

 Shell's original motion to compel was brought pursuant to Rule 26. Because Rule 26 does not authorize a district court to issue protective orders with respect to documents obtained through means other than the court's discovery processes [3], the Court's December 17, 1991, Order for production should reflect that it was entered pursuant to the Court's inherent authority to control and preserve the integrity of its judicial proceedings.

Accordingly,

IT IS ORDERED that:

1) Shell Oil Company's Motion to Alter or Amend Judgment on Shell's Motion to Compel or Alternatively, Motion for Rehearing is DENIED. The PLC is not required to identify the Shell-employee source.

2) The Plaintiff's Legal Committee's Motion for Reconsideration of Order Requiring Production of Documents is DENIED.

3) The plaintiffs shall within two days from the date of this order answer Shell Interrogatory No. 1 and Interrogatory No. 2, limited to documents received by the PLC from the Shell-employee source, regardless of whether the documents are irrelevant, publicly available, intended for impeachment, previously produced by Shell or the PLC, or previously ruled not to be discoverable.

4) The PLC shall within two days from the date of this order produce to Shell the documents identified in its answer to Shell Interrogatories Nos. 1 and 2.

5) The Court's December 17, 1991, Order for production of documents is AMENDED to reflect that it was entered pursuant to the Court's inherent authority to control and preserve the integrity of its judicial proceedings.

6) The plaintiffs may not make any use of the documents obtained from the Shell-employee source or any use of the information contained therein, including keeping any copies or notes of the information contained in the documents, unless the documents are publicly available or were previously produced by Shell.

7) The PLC shall not have any *ex parte* contact or communication in any manner, either directly, indirectly, or through a third party, with Jack Zewe or any Shell employees other than the employee-plaintiffs in this suit. If Jack Zewe or any Shell employee other than a plaintiff, initiates *ex parte* contact or communication in any manner, either directly, indirectly, or through a third party, with the PLC, the PLC shall immediately notify the Court and counsel for Shell. Failure to follow this order risks disqualification from this suit and other sanctions.

**3.** *Kirshner v. Uniden Corp.,* 842 F.2d 1074, 1080 (9th Cir.1988).