**PUBLIC CITIZEN HEALTH RESEARCH GROUP,**
Plaintiff,

v.

**FOOD AND DRUG ADMINISTRATION,**
Defendant,

and

**Anesta Corporation, and Abbott Laboratories, Defendant–Intervenors.**

Civil Action No. 94–0169 RMU.

United States District Court, District of Columbia.

Oct. 17, 1996.

Lucinda A. Sikes, Washington, DC, for Plaintiff.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM ORDER

URBINA, District Judge.

**DENYING THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT–INTERVENORS' MOTION FOR A PROTECTIVE ORDER**

This matter comes before the court upon the parties' cross-motions for summary judgment. In addition, Defendant–Intervenors Anesta Corporation and Abbott Laboratories (Defendant–Intervenors) have filed a motion seeking a protective order which would forbid the disclosure by Public Citizen Health Research Group (HRG) of a table of information released to HRG by the FDA. The table was inadvertently released to HRG pursuant to a Freedom of Information Act (FOIA) request and is one of seven tables at issue in this case.

The parties' cross-motions for summary judgment shall be denied as there are substantial issues of material fact in dispute. *See* Fed.R.Civ.P. 56(c). Defendant–Intervenors' motion for a protective order shall be granted. Accordingly, HRG will not disclose or make use of the information contained in Table 1.dose Variables. In addition, the portions of the court record which contain a reference to Table 1.dose Variables will be sealed pending this court's adjudication of the underlying merits of this dispute.

## I. BACKGROUND

This case has its genus in a FOIA request filed with the FDA by HRG dated January 5, 1994. In its request, HRG sought all documents distributed by the FDA to its advisory committees in preparation for the August 24, 1993 advisory committee discussion on Fentanyl Oralet (Oralet). Oralet is a lollipop containing the narcotic fentanyl that was eventually approved by the FDA in October 1993. Oralet is a premedication for children who are about to undergo anesthesia and/or surgery. After receiving no response to its FOIA request, HRG filed this action on February 1, 1994. In the complaint, HRG asked the court to find that the withholding of the requested information is in violation of FOIA and, further, to order the FDA to release the information to HRG. HRG seeks this information because it is concerned about the safety of Oralet and the possible negative consequences of "off-label" use by medical practitioners.

By letter dated March 9, 1994, the FDA notified HRG it had located seventy documents responsive to its request. The FDA released forty-two documents in total and fourteen documents with redacted portions. The remaining fourteen documents were withheld in their entirety. The FDA relied on exemptions four and six of FOIA in withholding this information.[1] After correspond-

---

1. Exemption four of FOIA allows an agency to withhold documents which contain trade secret and/or confidential commercial information. Exemption six of FOIA allows an agency to with-

ing and reviewing the withheld documents, all parties have agreed that the only documents at issue in this matter are seven tables which contain data associated with clinical studies of Oralet performed by Defendant–Intervenors and submitted to the FDA pursuant to Oralet's New Drug Application (NDA). This data pertains to patient dosages, consumption times, drug blood concentrations, ages, heights, and weights. Exemption four of FOIA is the exemption relied upon by the FDA with regards to the nondisclosure of these tables. Included in the released documents was one of the tables entitled "Table 1.dose Variables" (Table 1). The FDA claims that the release of this table was an error on its part as this document should have been withheld pursuant to exemption four of FOIA and 21 C.F.R. Section 20.61.

HRG first included Table 1 in Plaintiff's Opposition to Defendant's and Defendant–Intervenors' Motion for a Protective Order, dated April 18, 1994. Defendant–Intervenors first mentioned the allegedly illegitimate release of Table 1 in their Motions for Summary Judgment filed on May 25, 1994. HRG inserted Table 1 in another pleading dated August 19, 1994, Plaintiff's Reply to Defendant's and Defendant–Intervenors' Opposition to Plaintiff's Cross–Motion for Summary Judgment. Defendant–Intervenors filed this motion for a protective order some three months after they apparently first learned of Table 1's release.

## II. DISCUSSION

### A. Summary Judgment

■ When more than one party moves for summary judgment, each party must carry its own burden of proof. *United States Dep't. of Justice v. Reporter's Comm. for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 1472–73, 103 L.Ed.2d 774 (1989). In order to meet its burden, the moving party must prove that no genuine issue of material fact is in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *National Cable Television Assoc., Inc. v. Federal Communications*

*Commission*, 479 F.2d 183, 186 (D.C.Cir. 1973).

■ In FOIA cases, a court "may grant summary judgment solely on the basis of agency affidavits if they are clear, specific and reasonably detailed, and there is no contradictory evidence on the record[.]" *Hayden v. National Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). However, since summary judgment is such a "drastic remedy, courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." *Greenberg v. FDA*, 803 F.2d 1213, 1216 (D.C.Cir.1986).

■ The central issue in this case is whether the information sought by HRG is exempt from disclosure pursuant to exemption four of FOIA because the public dissemination of this information would cause substantial harm to the competitive positions of Defendant–Intervenors. All of the parties have submitted affidavits supporting their respective positions on this issue. Expectedly, the experts for HRG declare that the dissemination of this information will in no way harm the competitive positions of Defendant–Intervenors. Conversely, the experts offered by Defendant FDA and Defendant–Intervenors posit that making this information public will cause substantial harm to the competitive positions of both Anesta and Abbott.

In circumstances such as the ones presented in this case, the D.C. Circuit Court of Appeals has cautioned against the resolution of the dispute via summary judgment. In *Greenberg v. FDA*, 803 F.2d 1213 (D.C.Cir. 1986), a FOIA "exemption four" case similar to the case presently before the court, a staff attorney with HRG requested from the FDA a list of customers who had purchased CAT scanners from a manufacturer. *Id.* at 1214. The FDA refused to release the information; and Mr. Greenberg sued. *Id.* Technicare, the company which manufactured the CAT

---

hold documents which, if released, would cause an unwarranted invasion of personal privacy.

*See* 5 U.S.C. Section 552(b)(4) and (6).

scanners that were the subject of Greenberg's FOIA request, filed a motion for summary judgment supported by affidavits outlining how the release of this information would work a substantial harm to the company's competitive position. *Id.* at 1215. Technicare posited that the information was properly withheld under exemption four of FOIA. *Id.* In his opposition, Greenberg offered affidavits which contradicted Technicare's claims regarding the purported harm the release of this information would have on the company's competitive position. *Id.* at 1217–18. The district court ruled that Greenberg had not carried his burden of rebutting Technicare's evidence and it therefore granted defendant FDA's motion for summary judgment. *Id.* at 1217. The D.C. Circuit Court of Appeals reversed. The court stated that the plaintiff's "showing [was] enough to rebut Technicare's summary judgment motion[.]" *Id.* at 1218. The court went on to state that the factual disputes contained in the affidavits were enough to rebut a summary judgment motion and to "allow appellant an opportunity" to prove his case. *Id.* The court concluded that "even in this day of crowded court dockets, every litigant with a well-pleaded complaint and contested material issues deserves his or her day in court." *Id.* at 1219.

In *Washington Post Co. v. United States Dep't. of Health & Human Services,* 865 F.2d 320 (D.C.Cir.1989), the Court of Appeals went even further in cautioning against the use of summary judgment in FOIA cases where both sides have submitted conflicting affidavits. In *Washington Post Co.,* another exemption four case, both parties filed conflicting affidavits regarding whether the release of the information at issue would "seriously impair" the government's information gathering ability. *Id.* at 325. The district court reviewed the affidavits and concluded that the more credible evidence was presented by the government's affidavits and entered summary judgment in favor of the

government. *Id.* at 326. The Court of Appeals vacated the district court's order and remanded the case. *Id.* at 328. The court stated that, since *factual* issues are "rarely susceptible to definitive proof," the ultimate factual issues in a case are "most successfully approached when all relevant evidentiary underpinnings are fully developed." *Id.* at 326. In a case where "there is a conflict in the affidavits as to what adverse consequences will flow from the revelation of the facts contained in the documents sought to be disclosed," it would seem that "there is indeed a conflict regarding very material facts which calls for some type of adversary procedure." [2] *Id.* (*quoting Sears, Roebuck & Co. v. GSA,* 553 F.2d 1378, 1382 (D.C.Cir.)), *cert. denied,* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977).

In the present case, all parties have submitted affidavits. The claims made by the experts in these affidavits regarding the impact the release of this information would have on Anesta and Abbott are contradictory. The experts of Anesta, Abbott and the FDA all affirm that the release of the seven tables into the public domain will work a substantial economic harm on the two companies. In contrast to these opinions, the experts offered by HRG claim that the release of the seven tables cannot work a substantial economic harm on the two companies as the information contained in the tables in useful only when analyzed to determine the effectiveness and safety of Oralet and could not be used to prove the safety and effectiveness of a rival product, nor could it be used to create a competitor product. Since there remain genuine issues of material fact in dispute, summary judgment is presently an inappropriate vehicle for the resolution of this matter. Accordingly, a bench trial will be held in this matter.

### B. Protective Order

Defendant–Intervenors also seek a protective order from this court containing two types of relief. First, Defendant–Interve-

---

**2.** The court did not state what type of adversarial proceeding the trial court would be required to conduct. The court instead remanded the case to enable "both sides to address and contest" the disputed issues. *Washington Post Co.,* 865 F.2d at 327. Courts, however, are allowed wide discretion in fashioning the type of adversarial proceeding necessary. *See Sears, Roebuck & Co. v. GSA,* 553 F.2d 1378, 1382–83 (D.C.Cir.), *cert. denied,* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977).

nors move this court to prohibit HRG from using or disseminating the information contained in Table 1 since such information was inadvertently released by the FDA to HRG. Second, Defendant–Intervenors move this court to seal certain portions of the record in this case which contain Table 1; namely, Exhibit C to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's and Defendant–Intervenors' Motion for a Protective Order (addressing plaintiff's interrogatories) and Exhibit 1 to the Supplemental Declaration of Darrell R. Abernethy, M.D. in Support of Plaintiff's Cross–Motion for Summary Judgment.

HRG counters that this court lacks the power to enter a protective order with regards to the information inadvertently released by the FDA. First, HRG claims that this court is powerless to order it not to disseminate or use the information contained in Table 1 since such an order would violate the First Amendment. Second, HRG claims that this court is powerless to seal the portions of the court record containing Table 1 because such an order would violate the First Amendment and the public's common law right of access to civil proceedings. Lastly, HRG posits that Defendant–Intervenors' inaction, after Defendant–Intervenors should have known Table 1 had been released, acts as a waiver in regards to any confidentiality interest Defendant–Intervenors may have had in the information contained in Table 1. The court disagrees and will enter a protective order.

■ As an initial matter, the court notes that this protective order is not entered pursuant to Fed.R.Civ.P. 26. The power to grant a protective order under this rule must be exercised in conjunction with information gained or sought through discovery. *See* Fed.R.Civ.P. 26(c). The court, however, has powers vested upon it that are not derived from any statute or rule. *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 561 (3d Cir. 1985). Courts have the "inherent authority to control and preserve the integrity" of their

judicial proceedings. *In re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D.La.1992). In exercising such power, the court is concerned only with "balancing the scales" and protecting its judicial proceedings. *Id.* at 108–09. The entering of this protective order will further this objective. The court will control the information at issue until it determines whether it qualifies for non-disclosure pursuant to exemption four of FOIA. If the information is not subject to disclosure under exemption four, it should not be publicly available. If, however, the court determines that the information is not covered by exemption four, then the court will order it disclosed. Prior to the court making this determination, however, Table 1 shall not be disseminated.

■ HRG argues that First Amendment concerns counsel against such an order being issued by this court. HRG relies on the proposition that once the government has put information into the public domain, a court is powerless to stop publication of such information. The cases cited by HRG for this proposition are, however, distinguishable from the circumstances in this case.[3] All of the cases cited by HRG involve the party that disclosed the information seeking to prevent its dissemination. In contrast, Defendant–Intervenors in the case currently before the court did not disclose Table 1 to HRG; the government did. Moreover, the escape of the information into the public domain in these cases was due to a conscious choice by the party seeking to have the information's dissemination halted. That is qualitatively different than the situation in this case where the government *inadvertently* inserted Defendant–Intervenors' information into the public domain. Lastly, a protective order prohibiting HRG from disseminating or using the information contained in Table 1 will not infringe on any First Amendment concern, as this order is only temporary in nature and as such, is "not the kind of classic prior restraint that requires exacting First

---

3. HRG relies on *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979); *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977); *Bonito Boats Inc. v. Thunder Craft Boats Inc.*, 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989); and *Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989).

Amendment scrutiny." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 26, 104 S.Ct. 2199, 2204, 81 L.Ed.2d 17 (1984).[4]

▮▮▮ HRG also objects to this court sealing the two relevant portions of the pleadings filed thus far which contain Table 1 as an attachment. HRG claims that since Table 1 has already been filed in unsealed court pleadings, this court cannot now seal the relevant portions of these documents because to do so would violate the First Amendment as well as the public's common law right of access to civil proceedings. The court recognizes that there is a presumption of openness with respect to court proceedings. *United States v. Hubbard,* 650 F.2d 293, 317 (D.C.Cir.1980). This presumption must, however, be balanced with the court's power to regulate the use of information or documents, obtained through means other than discovery, in a proceeding before the court. *See Gumbel v. Pitkin,* 124 U.S. 131, 146, 8 S.Ct. 379, 384, 31 L.Ed. 374 (1888) (the court has the power "over its own process to prevent abuse, oppression and injustice."); *see also Smith v. Armour Pharmaceutical Co.,* 838 F.Supp. 1573, 1578 (S.D.Fla.1993) (court has the power to control the proceedings before it and the manner in which information is used in those proceedings). Moreover, it is well settled that "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court." *Hubbard,* 650 F.2d at 316–17.

▮▮▮ In *Hubbard,* the Court of Appeals set forth a test to determine whether portions of a court record should be sealed. *Id.* at 317–22; *see also Johnson v. Greater Southeast Community Hospital Corp.,* 951 F.2d 1268, 1277 n. 14 (D.C.Cir.1991). The six factors to be considered when applying this test are: (1) the need for public access to the judicial proceeding; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to the disclosure and the identity of

that party; (4) the strength of the property and privacy interests; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced. *Hubbard* at 317–22. The court finds that these factors weigh in favor of the court sealing the relevant portions of the record in this case.

First, the public's access to these proceedings is not hampered by this protective order as the trial in this matter will be open to the public. Second, while the public did have full access to the documents in question prior to the entry of this order, HRG has presented no evidence that anyone has in fact taken advantage of this access. Third, HRG is the party objecting to the sealing of this record. No outside party, not a participant in this litigation, has objected to a partial sealing of the record. Fourth, Defendant–Intervenors have demonstrated sufficiently strong property and privacy interests in the information. Fifth, the possibility of prejudice to HRG by the sealing of these two attachments is minor as the court will still consider this information when arriving at a decision on the merits. Sixth, since plaintiff introduced the document into the record to bolster its view with respect to the applicability of exemption four and since the court has stated that it will still consider Table 1 when arriving at its decision, sealing the relevant portions of the record will not eviscerate the purpose for which the information was submitted. After carefully analyzing the six factors, the court concludes that temporarily sealing a small portion of the record in this case is appropriate.[5]

▮▮▮ Lastly, HRG claims that because Defendant–Intervenors did not act immediately to request a protective order, they have waived their right to do so. While Defendant–Intervenors did not move with all dispatch in requesting a protective order, their inaction does not constitute a waiver of any confidentiality interests they may have had in the information. There is no evidence that

4. This matter is set for a bench trial on February 3, 1997. Accordingly, the protective order will be very limited in duration. This protective order will only control the use and dissemination of Table 1 by HRG until the court reaches its decision on the merits of the dispute.

5. *See Johnson,* 951 F.2d at 1278 (sealing "order should be no broader than is necessary to protect those specific interests identified as in need of protection.").

the confidential character of Table 1 has been breached by another party because of its inclusion in these court records. Consequently, sealing the two attachments in the record which contain Table 1 is appropriate.[6]

Accordingly, it is this 17th day of October 1996,

ORDERED that the parties' cross-motions for summary be and are hereby DENIED and this matter be set for a bench trial on *February 3, 1997* at 10:00 a.m.; and it is

FURTHER ORDERED that Defendant–Intervenors' Motion for a Protective Order be and is hereby GRANTED. Public Citizen Health Research Group will not use or disseminate any of the information contained in the table entitled Table 1. Dose Variables nor will it assist others in using or disseminating this information during the pendency of this case; and it is

ORDERED that the following portions of the court record in this case be sealed:

Exhibit C to Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's and Defendant–Intervenors' Motion for a Protective Order filed with this court on April 20, 1994; and Exhibit 1 to the Supplemental Declaration of Darrell R. Abernethy, M.D. in Support of Plaintiff's Reply to Defendant's and Defendant–Intervenors' Opposition to Plaintiff's Cross–Motion for Summary Judgment filed with this court on August 19, 1994; and it is

FURTHER ORDERED that to conduct the trial in this matter in the most efficient manner:

(1) the parties are to submit proposed Findings of Fact and Conclusions of Law, in numbered paragraphs, to the court no later than *January 27, 1997*. These submissions shall be made in hard copy and on a 3½ inch disc in WordPerfect version 6.0 or 6.1;

(2) the court will treat the submitted declarations and affidavits as the direct testimony of each respective declarant/affiant. Ac-

cordingly, there will be no direct examination of witnesses at trial;

(3) the party or parties contesting a proffered declaration or affidavit will be accorded a total of forty-five (45) minutes to cross-examine the declarant/affiant;

(4) the party offering the declaration/affidavit will be accorded a brief re-direct examination of the declarant/affiant, however this examination shall be limited to points raised during cross-examination and not already developed in the declarations/affidavits;

(5) a party's witness may refer to the declarations/affidavits during the trial;

(6) the parties will provide the court with notice no later than *January 30, 1997* with respect to all declarants/affiants they intend to cross-examine at trial.

SO ORDERED.

---

**6.** *See Gates Rubber Co. v. Bando Chemical Industries, Ltd.,* 9 F.3d 823, 849 (10th Cir.1993) (absent a showing that the information was published outside the record, defendant's delay in seeking a sealing of the record is inadequate to deprive the information of its confidential status).