SECURITIES and EXCHANGE COMMISSION, Applicant,

v.

Christopher FINAZZO and South Bay Apparel, Inc., Respondents.

Misc. Action No. 18–304 (HB).

United States District Court, S.D. New York.

March 27, 2008.

---

***OPINION & ORDER***

HAROLD BAER, JR., Part I District Judge.

The Securities and Exchange Commission (the "Commission") has applied to this Court to enforce administrative subpoenas issued to respondents Christopher Finazzo ("Finazzo") and South Bay Apparel, Inc. ("South Bay") in connection with the Commission's non-public investigation, *In the Matter of Aéropostale, Inc.* (the "Aéropostale Investigation"). At the argument on March 25, 2008, Finazzo urged this Court to deny the Commission's application outright or, alternatively, to hold the Commission's application in abeyance while Finazzo conducts discovery in connection with an alleged violation by third parties of his attorney-client privilege. South Bay is essentially ready to comply but awaits this opinion and order. For the reasons set forth below, the Commission's application is GRANTED and the Respondents are hereby ORDERED to comply with the subpoenas issued to them by the Commission staff in the Aéropostale Investigation.

## I. FACTUAL BACKGROUND

On August 24, 2006, while Finazzo was still employed by Aéropostale, Inc. ("Aéropostale") as Executive Vice President and Chief Merchandising Officer, his estate planning lawyer, Angela Siegel ("Siegel"), sent him an email at his Aéropostale email address (the "Attorney Siegel Email"). Finazzo's Mem. in Opp'n to Staff's Mot. to Enforce Subpoena (Mar. 19, 2008) ("Finazzo Mem.") 1; *see* Decl. of Robert J.A. Zito (Mar. 19, 2008) ("Zito Decl.") Ex. A. The Attorney Siegel Email was clearly from a lawyer and contained a standard "Privilege and Confidentiality Notice." Siegel attached to her email a Word document titled "Finazzo Family Assets" that contained a list of Finazzo's and his family's interests in various business entities, including South Bay, one of Aéropostale's largest vendors. Finazzo Mem. 2.

During September 2006 Aéropostale undertook an internal investigation, which Finazzo claims had nothing to do with him, of certain business expenses. *Id.* In the course of this inquiry, investigators from Kroll, an outside firm retained by Aéropostale's counsel, Katten Muchin Rosenman LLP ("KMR"), found, opened and read the Attorney Siegel Email and its attachment on Finazzo's work computer. *Id.* Kroll revealed the email and attachment to KMR and Aéropostale, but no one told Finazzo. *Id.* at 3. Ultimately, Aéropostale terminated Finazzo's employment "for cause" because Finazzo had not disclosed to the company his or his family's ownership interests in South Bay and perhaps other entities listed on the Attorney Siegel Email attachment. *Id.*

On November 8, 2006, Aéropostale issued a press release and filed with the Commission a Form 8–K that announced it

had terminated Finazzo's employment for cause because the company's internal investigation

> revealed that Mr. Finazzo had concealed personal ownership interests in, and served as an officer of, entities affiliated with one of [Aéropostale's] largest vendors, South Bay Apparel, Inc. These activities by Mr. Finazzo and their concealment, constitute conflicts of interest in breach of the Company's Code of Business Ethics, and violations of Mr. Finazzo's employment agreement.

Decl. of Michael D. Birnbaum (Feb. 25, 2008) ("Birnbaum Decl.") Ex. 1. On April 2, 2007, Aéropostale issued its Annual Report for the fiscal year ended February 3, 2007, in which it elaborated on Finazzo's undisclosed conflicts of interest and added that he had executed, without the company's knowledge, a corporate Guaranty Agreement that, had it been enforceable, would have obligated Aéropostale to guarantee any payments due from South Bay to a third-party manufacturer. Birnbaum Decl. Ex. 2.

After reviewing Aéropostale's 10–K disclosure, the Commission issued a Formal Order on January 10, 2008, directing Commission staff to conduct a private investigation of Aéropostale to determine whether any persons or entities had violated the securities laws. Birnbaum Decl. ¶ 4. Pursuant to the Formal Order, on January 16 and 17, 2008, an officer of the Commission served subpoenas on Finazzo (the "Finazzo Subpoena"), calling for the production of documents and testimony, and on South Bay (the "South Bay Subpoena"), seeking the production of documents. Birnbaum Decl. Exs. 4, 5. Both Finazzo and South Bay have expressly refused to comply with the subpoenas. Birnbaum Decl. ¶ 7. On February 27, 2008, the SEC filed the instant application to enforce the Finazzo and South Bay Subpoenas.

On March 4, 2008, Finazzo filed a declaratory action against the Commission seeking to enjoin its investigation. *Finazzo v. SEC*, No. 08 Civ. 2176 (S.D.N.Y.) (J. Sullivan). On March 4 and 5, 2008, Finazzo served subpoenas on four nonparties for documents and depositions: (1) Aéropostale, (2) KMR, (3) Kroll, and (4) Deloitte & Touche LLP ("Deloitte"), Aéropostale's auditor, each of which has objected to the subpoena. Zito Decl. Exs. C–F.

## II. STANDARD OF REVIEW

■ Section 21(c) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u(c), authorizes the Commission to seek an order from this Court compelling respondents to comply with the subpoenas. "The courts' role in a proceeding to enforce an administrative subpoena is extremely limited." *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96 (2d Cir.1997) (quoting *In re McVane*, 44 F.3d 1127, 1135 (2d Cir.1995)). To have its subpoenas enforced, the Commission "must show (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry may be relevant to the purpose, (3) that the information sought is not already within the Commission's possession, and (4) that the administrative steps required ... have been followed ...." *Id.* (quoting *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)). "An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met." *Id.* at 97 (quoting *McVane*, 44 F.3d at 1136).

■ A respondent who seeks to defeat enforcement of a Commission subpoena bears the burden of demonstrating that the subpoena is unreasonable or was issued in bad faith or for an "improper purpose," or that compliance would be *"unnecessarily* burdensome." *Id.* at 97

(quoting *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir.1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974)).

## III. DISCUSSION

■ The Declaration of Michael D. Birnbaum ("Birnbaum"), an attorney in the Commission's Enforcement Division, and its exhibits are sufficient to establish a *prima facie* showing that the Commission has met the subpoena enforcement requirements. First, the Aéropostale investigation is conducted pursuant to a legitimate purpose, to determine whether any individual or entity violated the securities laws in connection with Aéropostale's failure to disclose in its public filings Finazzo's and his family's interests in and dealings with certain of its vendors, including South Bay. Decl. of Birnbaum (Feb. 25, 2008) ("Birnbaum Decl.") ¶ 3. Section 21(a)(1) of the Exchange Act, 15 U.S.C. § 78u(a) (*l*), expressly authorizes the Commission to investigate suspected violations of the Exchange Act and the rules thereunder. Second, the Finazzo and South Bay Subpoenas are relevant to the investigation's legitimate purpose because they request information about Finazzo's relationships and dealings with South Bay. Birnbaum Decl. ¶¶ 5–6, Exs. 4, 5. Neither respondent has objected to the subpoenas on the ground that the information sought is irrelevant. Third, the Commission does not possess the information sought from Finazzo and South Bay. Birnbaum Decl. ¶¶ 7, 13, 20. Fourth, the Commission followed the required administrative steps because an officer designated by the Commission issued the subpoenas, which were properly served. Birnbaum Decl. ¶¶ 4, 8, 16.

■ Because the Commission has made a *prima facie* showing that the subpoenas should be enforced, Finazzo and South Bay bear the burden of demonstrating that the subpoenas are unreasonable or issued in bad faith or for an improper purpose, or that compliance would be unnecessarily burdensome. Finazzo appears to assert that the subpoenas were issued in bad faith or for an improper purpose. His sole argument is that the alleged violations of attorney-client privilege by Aéropostale, KMR and Kroll "tainted" the Commission's investigation.[1] Finazzo reasons that if Aéropostale, KMR and Kroll had not violated the attorney-client privilege by reading and acting upon the Attorney Siegel Email and attachment, Aéropostale would not have fired him or disclosed his related-party transactions and the Commission would not have commenced its investigation or issued the subpoenas.

No party cites a case in this Circuit, and there appears to be none, that has decided the validity of an administrative subpoena issued by an agency in response to public disclosures founded on allegedly privileged information. Indeed, Finazzo suggests his argument raises a question of first impression. Given the courts' "extremely limited role" in proceedings to enforce administrative subpoenas and the burden borne by Finazzo, I find that Finazzo has not shown that the Finazzo or South Bay Subpoenas were issued in bad faith or for an improper purpose.

Several cases upon which Finazzo relies involved situations where a party sought to obtain privileged information or to admit privileged information into evidence. *See Surgical Design Corp. v. Correa*, 21 A.D.3d 409, 410, 799 N.Y.S.2d 584 (N.Y.App.Div.2005) (suppression of attorney-client privileged documents); *Manuf.*

---

**1.** That the alleged violations of attorney-client privilege "tainted" the Commission's investigation is also the gravamen of Finazzo's declaratory action before Judge Sullivan.

& *Traders Trust,* 132 A.D.2d 392, 398, 522 N.Y.S.2d 999 (N.Y.App.Div.1987) (protective order covering attorney-client privileged documents); *United States v. Longo,* 70 F.Supp.2d 225, 266 (W.D.N.Y.1999) (no evidence of privilege violation where party only speculated that Government agents may have provided prosecutor with apparently non-privileged information that they obtained through knowledge of privileged communication); *SEC v. Forma,* 117 F.R.D. 516, 526–27 (S.D.N.Y.1987) (discussing alternative approaches when Commission breaks attorney-client privilege); *In re Asia Global Crossing, Ltd.,* 322 B.R. 247, 253 (Bankr.S.D.N.Y.2005) (trustee in bankruptcy proceeding sought documents that may have been subject to attorney-client privilege). Finazzo points to other case law showing that the proper remedy of a breach of attorney-client privilege is to restore the injured party as close as possible to the *status quo ante. See, e.g., Church of Scientology v. United States,* 506 U.S. 9, 13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992).

Here, however, the Commission expressly seeks *non-privileged* information in the Finazzo and South Bay Subpoenas.[2] On January 28, 2008, Birnbaum, on behalf of the Commission, sent a letter to Finazzo's counsel explaining that "the Commission does not seek privileged material but, rather, seeks non-privileged documents along with a description of any materials withheld on the basis of any privilege" and requesting "non-privileged documents and a privilege log" and for Finazzo to "testify regarding non-privileged matters." Birnbaum Decl. ¶ 10, Ex. 8. On February 4, 2008, Birnbaum sent a letter to South Bay's counsel to clarify that the Commission did not expect South Bay to produce privileged documents, but did "expect that South Bay will produce all non-privileged, responsive documents." *Id.* ¶ 19, Ex. 14.

Finazzo further argues that, even if the Finazzo and South Bay Subpoenas seek only non-privileged information, that information would be suppressed as evidence under a "fruit of the poisonous tree" doctrine. First, the admission or suppression of evidence is not before the Court in this subpoena enforcement proceeding. Second, Finazzo has not cited any authority that would preclude the Commission from relying on the non-privileged information sought by the Finazzo and South Bay Subpoenas. *In re Beiny,* 129 A.D.2d 126, 141, 517 N.Y.S.2d 474 (N.Y.App.Div.1987), upon which Finazzo relies, is distinguishable on its facts because it involved "willful disregard of procedural rules, deceit, and the covert acquisition of otherwise unobtainable privileged material" by attorneys in a trust accounting proceeding. The court suppressed the privileged material and disqualified the attorneys because in light of the extent of privileged information it would be "virtually impossible . . . to keep the tainted information which [the attorneys] possess[ ] from surreptitiously finding its way back into the proceeding." *Id.* at 142, 517 N.Y.S.2d 474.

In *In re Shell Oil Refinery,* 143 F.R.D. 105, 107–08 (E.D.La.1992), another case cited by Finazzo, a plaintiff circumvented the normal discovery process by surreptitiously and inappropriately obtaining the defendant's proprietary documents from one of defendant's employees without the defendant's knowledge, The court, however, expressly permitted plaintiff to use documents that were "publicly available." *Id.* at 109. Here, the Commission has followed proper subpoena procedures and seeks non-privileged information stemming from Aéropostale's public disclosures.

---

**2.** Moreover, the Commission claims it does not possess the purportedly privileged Attorney Siegel Email and attachment. Commission's Reply Mem. (Mar. 24, 2008) 5.

*SEC v. OKC Corp.*, 474 F.Supp. 1031, 1039 (N.D.Tex.1979), upon which Finazzo relies, actually supports the SEC's position. In that case, the respondent argued that the Commission's subpoena was unenforceable because the Commission had used a confidential report prepared by the respondent's outside counsel to further its investigation. The respondent argued that the Commission, "by using the report as a basis for developing independent, unprivileged evidence, will effectively undermine that privilege." *Id.* The court nevertheless enforced the Commission's subpoena, distinguishing between (1) improper *government* intrusion into one's privilege and (2) improper intrusion by a *private party* working without government cooperation. *Id.* at 1039–40. Here, the Commission did not intrude into Finazzo's privilege, or Aéropostale's internal investigation, where the allegedly privileged document surfaced, occurred prior to the disclosures that triggered the Commission's investigation. *See also United States v. Bonnell*, 483 F.Supp. 1070, 1079, 1081 (D.Minn. 1979), (holding that "respondents may not resist production of unprivileged evidence [to the IRS] on the ground that the summons is based on work product" and observing that "the IRS is conducting an investigation, not introducing evidence at a trial" and "[a]dministrative agencies have broad powers to gather information ... regardless of whether the information collected would be admissible at trial").

Therefore, because the Commission is not seeking privileged information and is merely conducting an investigation, not introducing evidence at trial, Finazzo has not shown that the Court should refuse to enforce the Finazzo and South Bay Subpoenas. This Court need not decide whether the Attorney Siegel Email was privileged or whether Finazzo waived the privilege by receiving the email at his Aéropostale email address. It thus would serve no purpose to hold the Commission's application in abeyance while Finazzo engages in limited discovery to determine whether the Attorney Siegel Email is privileged, or whether the Commission has received privileged documents from other sources. Such discovery would be irrelevant to this subpoena enforcement proceeding.

Finally, Finazzo's argument that "the Commission is complicit in the corporate investigation that Aéropostale engaged in which led to the violation of the attorney-client privilege" is unsupported. *See* Finazzo Mem. at 20. It is undisputed that the Commission publicly encourages corporations to engage in self-regulation and to disclose any unlawful conduct uncovered by internal investigations. It is something else to allege that the Commission encourages, or condones, internal corporate investigations that violate an employee's attorney-client privilege.

## IV. CONCLUSION

Therefore, for the foregoing reasons, the Commission's application is GRANTED and the Respondents are hereby ORDERED to comply with the subpoenas issued to them by the Commission staff in the Commission's nonpublic investigation *In the Matter of Aéropostale, Inc.* (Internal File No. NY–7802), and to do so within ten days from the date hereof.

**IT IS SO ORDERED.**