**NORTH PACIFICA, LLC, Plaintiff,**

**v.**

**CITY OF PACIFICA, et al., Defendants.**

**No. C–01–4823–EMC.**

United States District Court, N.D. California.

July 30, 2003.

Jaquelynn C. Pope, Mark D. Warshaw, Warshaw & Pope, Hermosa Beach, CA, for Plaintiff.

Michelle Marchetta Kenyon, Kevin D. Siegel, McDonough Holland & Allen, Oakland, CA, Cecilia Quick, City of Attorney City of Pacifica, Pacifica, CA, for Defendants.

## ORDER RE DELIBERATIVE PROCESS PRIVILEGE

CHEN, United States Magistrate Judge.

During the Final Pretrial Conference on July 16, 2003, the Court asked the parties

to brief the deliberative process privilege and attorney-client privilege as they affect the potential testimony of the City Council members at trial. Having reviewed the briefs and having considered the arguments of counsel, the Court hereby finds that (1) the deliberative process privilege is applicable but that, as a qualified privilege, it is overcome under the circumstances and (2) it will need to conduct on a case-by-case basis whether the attorney-client privilege is applicable.

## I. FACTUAL BACKGROUND

Plaintiff North Pacifica LLP ("NP") has filed suit against the City of Pacifica ("City"), claiming that its right to equal protection was violated when the City imposed a condition of approval on NP's proposed condominium project that was more onerous than that imposed on similarly situated projects. The condition of approval, known as Condition 13(b), as interpreted by NP, requires that the covenants, conditions, and restrictions for the project state that individual homeowners be jointly and severally liable for, *inter alia*, the condominium's common areas, thus exceeding liability normally imposed on a homeowners' association. During a meeting on August 12, 2002, the City Council approved all of the conditions of approval on NP's project, including Condition 13(b).

During the Final Pretrial Conference on July 16, 2003, NP confirmed that two of the City Council members would be witnesses for its case-in-chief and also asked that the remaining three City Council members be added to its witness list. The Court granted the request and then permitted the City, upon request, to include the remaining three members on its own witness list. The issue arose, however, as to the permissible scope of the City Council members' potential testimony. NP argued that it should be allowed to ask the City Council members about the decision-making process resulting in the approval

of Condition 13(b), in particular, the motive and intent of the members in approving the condition. The City argued that the testimony of the City Council members was protected by the deliberative process and attorney-client privileges. The Court thus asked the parties to brief the privileges as they affect the potential testimony of the City Council members at trial.

## II. DISCUSSION

### A. Applicable Law

■ As a preliminary matter, the Court must first address whether the federal common law on privilege or the state law on privilege should apply. "In federal question cases, federal privilege law applies." *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d 1005, 1009 (9th Cir.1996) (citing Fed.R.Evid. 501). State privilege law may be considered if "enlightening," *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir.1996), or if useful "to fill in gaps in federal common law." *Speaker v. County of San Bernardino*, 82 F.Supp.2d 1105, 1109 (C.D.Cal.2000); *see also* Fed.R.Evid. 501, advisory committee notes (taking note that in some situations a federal court may "adopt[ ] or incorporate[ ] state law to fill interstices or gaps"). However, "state law cannot supply the rule of decision." *Speaker*, 82 F.Supp.2d at 1109 (C.D.Cal.2000). As stated by the Ninth Circuit: "In determining the federal law of privilege in a federal question case, absent a controlling statute, a federal court may consider state privilege law. But the rule ultimately adopted, whatever its substance, is not state law but federal common law." *Lewis v. United States*, 517 F.2d 236, 237 (9th Cir.1975).

### B. Deliberative Process Privilege

■ Federal common law recognizes the deliberative process privilege. Under the privilege, a government can withhold

documents or prevent testimony that "reflect[s] advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Communications*, 742 F.2d 1156, 1161 (9th Cir.1984). The purpose of the privilege is "to promote frank and independent discussion among those responsible for making governmental decisions and also to protect against premature disclosure of proposed ... policies or decisions."[1] *Id.*

The Supreme Court has expressly recognized the privilege with respect to the decisionmaking processes of government agencies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148–53, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (discussing privilege).[2] Many lower courts have also extended the privilege to protect the decisionmaking processes of local legislators, reasoning that, "[i]n terms of the alleged need for secrecy surrounding deliberations, there is no principled distinction between [local legislators] and those government officials who currently enjoy a deliberative process privilege." *United States v. Irvin*, 127 F.R.D. 169, 172 (C.D.Cal.1989); *see also In re Grand Jury*, 821 F.2d 946, 958–59 (3d Cir.1987) (in dictum, stating that deliberative process privilege for executive officials "provides a useful analogy for a confidentiality-based privilege for state legislators because executive agencies, like state legislators, engage in a wide variety of activities, including factual investigations for quasi-legislative rulemaking."). *But see Corporacion Insular de Seguros v. Garcia*, 709 F.Supp. 288, 298 (D.P.R.1989) (refusing "to hold that a deliberative process privilege protects state legislators" because "[t]here are too many potentially detrimental ramifications to applying a confidentiality-based privilege to a governmental body that should continually remain open to the legitimate scrutiny of its constituents"). The Court agrees that the deliberative process privilege applies not only to agencies but also local legislators.

■ Whether agencies or local legislators are involved, there are two requirements to establish the applicability of the privilege. First, the document or testimony "must be predecisional—*i.e.*, it must have been generated before the adoption of [a] policy or decision." *FTC*, 742 F.2d at 1161; *Sears*, 421 U.S. at 152, 95 S.Ct. 1504 (noting that "communications made after the decision and designed to explain it" are not privileged). Second, the document or testimony "must be deliberative in nature, containing opinions, recommendations, or advice about ... policies [or deci-

1. In most cases, the privilege has been invoked to protect documents. However, courts have applied the privilege to testimony as well as documents and have made no distinction in the application of the privilege with respect to the two kinds of evidence. *See, e.g., Newport Pacific, Inc. v. County of San Diego*, 200 F.R.D. 628 (S.D.Cal.2001) (discussing privilege with respect to depositions of legislative aides to county board); *Artfield Builders, Inc. v. Buffalo Grove*, No. No. 92 C 0284, 1992 WL 314185 (N.D.Ill. 1992) (discussing privilege with respect to depositions of village board members).

2. Though *Sears* focused on the exemption of documents under the Freedom of Information Act ("FOIA"), the Supreme Court did not in any way suggest that the privilege applied only in this context. In fact, if anything, the Court suggested the opposite. *See Sears*, 421 U.S. at 149, 95 S.Ct. 1504 ("[I]t is reasonable to construe Exemption 5 [of the FOIA] to exempt those documents, and only those documents, *normally privileged in the civil discovery context*.") (emphasis added). Moreover, federal courts have repeatedly recognized the privilege outside of the FOIA context. *See, e.g., Newport*, 200 F.R.D. at 630 (discussing privilege with respect to case in which plaintiff alleged violation of civil rights, equal protection, and due process).

sions]." *FTC*, 742 F.2d at 1161. "Purely factual material that does not reflect deliberative processes is not protected"; however, factual material that "is so interwoven with the deliberative material that it is not severable" is protected. *Id.; see also Sanchez v. Johnson*, No. C–00–1593 CW (JCS), 2001 WL 1870308, at *5 (N.D.Cal. Nov. 19, 2001) ("[T]he fact/opinion distinction should not be applied mechanically. Rather, the relevant inquiry is whether 'revealing the information exposes the deliberative process.' ").

■■■ The burden of establishing application of the privilege is on the party asserting it. *See Newport*, 200 F.R.D. at 636. Even if established, the privilege is "strictly confined within the narrowest possible limits consistent with the logic of its principles." *Sanchez*, 2001 WL 1870308, at *6 (internal quotation marks omitted). Moreover, even if established, the privilege can be overcome because it is a qualified privilege; that is, "[a] litigant may obtain deliberative materials [or information] if his or her need for the materials [or information] and the need for accurate fact-finding override the government's interest in non-disclosure." *FTC*, 742 F.2d at 1161.

■ In deciding whether the qualified deliberative process privilege should be overcome, a court may consider the following factors: (1) the relevance of the evidence; (2) the availability of other evidence, (3) the government's role in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *See id.* Other factors that a court may consider include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law. *See Irvin*, 127 F.R.D. at 173.

■ Related to the deliberative process privilege—indeed, perhaps inherently part of it—is what has sometimes been called the mental process privilege. *See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 325 (D.D.C.1966) (noting that "the immunity of intra-governmental opinions and deliberations ... rests upon another policy of equal vitality and scope"—*i.e.*, the protection of the mental processes of executive or administrative officials). This related privilege, which involves uncommunicated motivations for a policy or decision, has been applied in both the adjudicative and legislative context.

For example, in *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), the Supreme Court chastened that the Secretary of Agriculture should never have been forced to testify about the process by which he reached his conclusions about the proper rates to charged by market agencies for their services at stockyards. *See id.* at 421–22, 61 S.Ct. 999. " '[I]t was not the function of the court to probe the mental processes of the Secretary.' " *Id.* Similarly, in *City of Las Vegas v. Foley*, 747 F.2d 1294 (9th Cir.1984), the Ninth Circuit emphasized that inquiry into the motives of legislators (*e.g.*, purpose behind a challenged ordinance) is "a hazardous task. Individual legislators may vote for a particular statute for a variety of reasons. The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile.' " *Id.* at 1297.

■■■ The mental process privilege, like the deliberative process privilege, is qualified—*i.e.*, it may be overcome. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (stating that inquiry

into mental processes is usually to be avoided but recognizing that inquiry can be made under certain circumstances); *Village of Arlington Heights v. Metropolitan Hous. Dev.*, 429 U.S. 252, 268, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (stating that in certain circumstances members of decisionmaking body can be called to testify regarding purpose behind decision or policy). Given the related policy concerns that drive the two privileges, the Court concludes that the factors listed above as to whether the deliberative process privilege should be overcome may be used as guidance in determining whether the mental process privilege should be overcome. However, the Court notes that the level of intrusiveness entailed when a person's mental processes are probed may be greater than when objective indicia of deliberation (*e.g.*, communications) are disclosed. Thus, the two privileges may be subject to different outcomes depending on the circumstances. This is borne out by the Supreme Court's cautionary language in *Overton Park* and *Arlington Heights*. In *Overton Park*, the Supreme Court cautioned not only that "inquiry into the mental processes of administrative decision-makers is usually to be avoided" but also that, where there are administrative findings available, "there must be a *strong showing* of bad faith or improper behavior before such inquiry may be made." *Overton Park*, 401 U.S. at 420, 91 S.Ct. 814 (emphasis added). In *Arlington Heights*, the Supreme Court indicated that, even in a case in which a plaintiff had to prove invidious purpose or intent, as in a racial discrimination case, only "[i]n some *extraordinary instances*" might members of the decisionmaking body "be called to the stand at trial to testify concerning the purpose of the official action." *Arlington Heights*, 429 U.S. at 268, 97 S.Ct. 555 (emphasis added); *see also Foley*, 747 F.2d at 1298 (noting same).

■ Having reviewed the relevant law, the Court may now consider the applicability of the deliberative process privilege in the instant case. As noted above, NP seeks to question the City Council members about their decisionmaking process, in particular their motive and intent in approving Condition 13(b). This information is both predecisional and deliberative in nature: NP wants to acquire information that was part of the City Council's decisionmaking process prior to the approval of the condition. *Cf. Newport*, 200 F.R.D. at 637 (noting that plaintiffs sought "to discover information and advice these [legislative] aides provided and information these aides acquired in the course of their discussions with Supervisor Slater about her anticipated vote on Plaintiffs' project"). Consequently, it is highly likely that questions posed by NP will implicate the deliberative process privilege.

■ The privilege, however, as noted above, is qualified and may be overcome. The Court therefore looks to the factors listed above to determine whether in this instance the privilege is likely to be overridden due to other concerns.

The Court considers first the federal interest in the enforcement of federal law along with the seriousness of the litigation and the issues involved. In the instant case, the federal interest in the enforcement of federal constitutional rights weighs in favor of disclosure. *See Newport* 200 F.R.D. at 640 (noting that § 1983 claims serve a vital public interest); *cf. Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y.1989) ("In a civil rights action where the deliberative process of State or local officials is itself genuinely in dispute, privileges designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws."). Moreover, NP's equal protection claim is not frivolous; it has

survived summary judgment and is headed for trial. However, even though NP has alleged a violation of equal protection, no suspect class such as race or gender or some other basis for heightened scrutiny is involved. Thus, the seriousness of the litigation and the issues involved is somewhat lessened as compared to cases involving, for example, racial discrimination. Nonetheless, the federal constitutional interests involved are substantial.

The Court considers next the interest of NP, and ultimately of society, in accurate judicial fact finding and the relevance of the testimony NP seeks. In every case, the desirability of accurate fact finding weighs in favor of disclosure. *See Newport,* 200 F.R.D. at 638. In this case, however, the interest in accurate judicial fact finding is heightened because equal protection rights are at stake. *See id.* at 639 ("agree[ing] with Plaintiffs' assertion that the possibility of discrimination favors disclosure"). Moreover, there is no doubt that the testimony NP seeks from the City Council members is highly relevant to NP's equal protection claim. As explained in the Court's earlier order denying in part summary judgment, to prevail on its equal protection claim, NP must demonstrate that (1) the City intentionally treated NP differently from other similarly situated applicants and (2) there was no rational basis for the difference in treatment or the difference in treatment was motivated by animus directed at the Plaintiff. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (listing elements for equal protection claim brought by a class of one); *DeMuria v. Hawkes,* 328 F.3d 704, 707 (2d Cir.2003) (noting that "allegation of an impermissible motive and of animus is sufficient to establish an equal protection issue" in lieu of irrationality). The motive and intent of the City Council members are undisputably relevant to the second element. Because the City Council's mo-

tive and intent are central to NP's equal protection claim, and at issue is alleged governmental misconduct, these factors weigh strongly in favor of disclosure.

The Court addresses next the government's role in the litigation. As is evident from the two elements making up NP's equal protection claim, the decisionmaking process of the City Council is by no means collateral to the litigation; indeed, the decisionmaking process "is not swept up into the case, it *is* the case." *Irvin,* 127 F.R.D. at 174 (internal quotation marks omitted; emphasis in original); *see also In re Subpoena Duces Tecum Served on Office of Comptroller of Currency,* 145 F.3d 1422 (D.C.Cir.1998) (noting that "[t]he privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit"; adding that, "[i]f the plaintiff's cause of action is directed at the government's intent, ... it makes no sense to permit the government to use the privilege as a shield"). Thus, this factor also weighs in favor of disclosure. *See Newport,* 200 F.R.D. at 640 (noting that "role of the government in the litigation itself"—being sued for, inter alia, violation of equal protection and due process— "tip[s] the scales in favor of disclosure").

This leads the Court to what is perhaps the most important factor in determining whether the deliberative process privilege should be overcome: the availability or unavailability of comparable evidence from other sources. The City argues that the information that NP seeks from the City Council members (*i.e.,* the decisionmaking process) can be found in the administrative record, such as the minutes of the City Council hearing, which reflects the City Council's adoption of all the conditions of approval for NP's condominium project, including Condition 13(b). The City concedes that the administrative record says little, if anything, about Condition 13(b) in particular but contends that the absence in

the record is NP's fault because NP failed to bring up that specific condition for the City Council's attention, at least at the City Council hearing on August 12, 2002. Although the City faults NP for not raising Condition 13(b) for the City Council's consideration at the August 12, 2002, hearing, it appears that NP did send various letters to the City Council and/or its counsel about the condition, even if the condition was not specifically discussed at the hearing.

The Court recognizes that there is an administrative record and that the existence of this record is significant. In *Arlington Heights,* the Supreme Court highlighted the various evidentiary sources that could reveal whether a government policy or decision was motivated by an invidious purpose; one such source was the legislative or administrative history, "especially where there are contemporary statements by members of the decision-making body, minutes of its meetings, or reports." *Arlington Heights,* 429 U.S. at 268, 97 S.Ct. 555; *see also Overton Park,* 401 U.S. at 420, 91 S.Ct. 814 (directing district court on remand to examine full administrative record that was before Secretary of Transportation at time decision was made to authorize use of federal funds to finance construction of highway through park). However, the Court also recognizes that a "bare record may not disclose the factors that were considered or the [decisionmaker's] construction of the evidence" such that "it may be necessary . . . to require some explanation [from the decisionmaker]." *Id.* This is often true in equal protection cases where the evidence of discriminatory intent "does not typically lay dormant in an administrative record." *Newport,* 200 F.R.D. at 639. In the instant case, the administrative record before the City Council does not exhaust the universe of information considered by the body. It is entirely possible that Council members had private conversations with

the City's staff, NP's representatives, members of the public, and amongst themselves that are not embodied in the record. Yet this information may well be relevant in the ascertainment of motive, which is central to this case.

Finally, with respect to the possibility that disclosure here might hinder frank and independent discussion regarding contemplated policies and decisions, the Court is not convinced that communications in the future are likely to be chilled, especially given the limitations imposed on NP and the scope of its inquiry discussed below. Moreover, "if because of this case, [local legislators] are reminded that they are subject to scrutiny, a useful purpose will have been served." *Newport,* 200 F.R.D. at 640.

█ Given the factors discussed above, the Court concludes that the deliberative process privilege will likely be overcome. NP may question the City Council members about the decisionmaking process with respect to Condition 13(b), including the motive and intent behind approval of the condition. However, given the potential invasiveness of inquiry into the City Council members' internal mental processes, as reflected in the Supreme Court's cautionary language in *Overton Park* and *Arlington Heights,* the Court preliminarily will permit NP to question the City Council members only about *objective* manifestations of the decisionmaking process. For example, NP may ask the City Council members about what they said to others about NP and Condition 13(b), what they heard, what they read, what they were told, and so forth. The Court will not allow NP to inquire as to the City Council members' subjective uncommunicated thoughts. *Cf. Foley,* 747 F.2d at 1299 (in First Amendment case, stating that focus should be on objective manifestations of legislative purpose as opposed to subjective motivations of individual legislators).

Such inquiry is likely to be obviated to a large extent because NP can explore the objective evidence that surrounded and illuminated the decisionmaking process.[3] *See Overton Park,* 401 U.S. at 420, 91 S.Ct. 814 (noting that, where administrative findings available, "there must be a strong showing of bad faith or improper behavior" before inquiry into mental processes); *FTC,* 742 F.2d at 1161 (taking note of availability or unavailability of comparable evidence from other sources as factor in deciding whether deliberative process privilege should be overcome).

The Court reserves the authority, however, to revisit the line drawn herein at trial should it become clear that the objective evidence is inadequate to satisfy the countervailing truth-finding interests at issue. This might occur, for instance, if the City's successful assertion of the attorney-client privilege significantly impedes NP's access to objective evidence of the deliberative process.

## C. *Attorney–Client Privilege*

 Federal common law, of course, recognizes the attorney-client privilege. The privilege has been described by the Ninth Circuit as follows:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance,

permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

*United States v. Martin,* 278 F.3d 988, 999 (9th Cir.2002). The party asserting the privilege has the burden of establishing all of its elements and, even if established, the privilege is strictly construed. *See id.* at 999–1000.

In the instant case, the dispute centers around communications taking place during closed sessions of the City Council, pursuant to California's Brown Act. Under the Brown Act, the City Council may conduct a closed session "to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would prejudice the position of the [City Council] in the litigation." Cal. Gov't Code § 54956.9. The City argues that this provision of the Brown Act—in addition to the attorney-client privilege recognized by federal common law—should protect communications exchanged at any of the City Council's closed sessions which discussed litigation with NP.

 Because a federal claim is at issue (*i.e.,* violation of equal protection), "federal law determines whether there is a privilege." *Kaufman v. Board of Trustees,* 168 F.R.D. 278, 280 (C.D.Cal.1996). The Brown Act is not a privilege recognized under federal law. *See id.* at 280. Therefore, the Court focuses only on the attorney-client privilege.[4]

---

**3.** The Court notes that its ruling does not prevent a City Council member from *willingly* testifying as to his or her uncommunicated thoughts. Where a City Council member is willing to testify as to his or her uncommunicated motivations and not compelled by legal process, there is no danger that communications made during the decisionmaking process will be chilled. The Court would not find voluntary testimony a waiver of the privilege since the privilege is held by the body and not the individual legislator. *See Nissei*

*Sangyo Am. v. IRS,* No. 95–1019 (TFH/PJA), 1997 U.S. Dist. LEXIS 22473, at *20 (D.D.C. May 8, 1997) (noting that privilege belongs to government).

**4.** The closed sessions of the City Council, pursuant to the Brown Act, may indicate that the communications made during the meetings were intended to be confidential and that the communications of counsel therein were intended to provide legal advice. But the fact that the communications were made under

The Court is not persuaded that all communications during the closed sessions of the City Council, with the presence of legal counsel, are necessarily privileged. In the business world, a meeting is not automatically privileged simply because legal counsel is present. *See Marten v. Yellow Freight System, Inc.*, No. 96–2013–GTV, 1998 WL 13244, at *7 (D.Kan. Jan. 6, 1998) (noting that " '[t]he mere attendance of an attorney at a meeting does not render everything done or said at that meeting privileged' "). Moreover, in the business world, " '[t]he mere fact that clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that *everything* said at the meeting is privileged.' " *Id.* (emphasis added). In general, legal advice is implicated "if the nonlegal aspects of the consultation are integral to the legal assistance given and the legal assistance is the *primary purpose* of the consultation." 1 Paul R. Rice, Attorney Client Privilege in the United States § 7:3, at 39 (2d ed.1999) (emphasis in original); *see also Marten*, 1998 WL 13244, at *7 (noting that " '[l]egal advice must predominate for the communication to be protected' " and that, "[w]hen the legal advice 'is merely incidental to business advice,' the privilege does not apply"). *See, e.g., Burton v. R.J. Reynolds Tobacco Co.*, 200 F.R.D. 661, 670–71 (D.Kan.2001) (concluding that request from outside counsel involved business advice when request was simply that client "isolate a quantity of tobacco glycoprotein and provide the quantity to the Council for Tobacco Research grantees for studies on its biological properties to substantiate or refute the claims of [a] researcher"); *Asset Value Fund Ltd. Pshp. v. Care Group*, No. 97 Civ. 1487(DLC)(JCF), 1997 WL 706320, at *4 (S.D.N.Y. Nov. 12, 1997) (stating that deci-

sion not to take action based on attorney's legal research did not transform attorney's work into business advice).

*Larson v. Harrington*, 11 F.Supp.2d 1198 (E.D.Cal.1998) involved circumstances similar to those in the instant case. In *Larson*, the issue was whether the attorney-client privilege protected communications made at closed session meetings of the county board of supervisors, during which the board discussed the disciplining of plaintiff as a public employee and during which legal counsel provided legal advice to the board. *See id.* at 1200–01. The court stated that

> the fact that confidential communications within the privilege may have been made at the board meetings does not cloak the *entire* proceeding in secrecy. The agendas for the pertinent board meetings ... show that they were closed not to obtain legal advice but to consider disciplining a public employee and those discussions are certainly not within the attorney-client privilege.

*Id.* at 1201 (emphasis added).

The line between business and legal advice may be gray, especially when the communication may have multiple functions. *See, e.g., In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir.1997) (concluding that minutes of meeting privileged because, even if ultimate decision reached by committee could be characterized as a business decision, committee "reached that decision only after examining the legal implications of doing so" and decision was "infused with legal concerns"); *Coleman v. ABC*, 106 F.R.D. 201, 206 (D.D.C.1985) (stating that "legal and business considerations may frequently be inextricably intertwined" and that "mere fact that business considerations are weighed in the rendering of

the auspices of the Brown Act is only evidence of elements of the privilege; it is not dispositive to the federal court's determination of application of the privilege.

legal advice does not vitiate the attorney-client privilege").

*Wilstein v. San Tropai Condominium Master Ass'n,* 189 F.R.D. 371 (N.D.Ill. 1999) is illustrative. In *Wilstein,* the issue was to what extent the attorney-client privilege protected from discovery the statements made by the condominium board members during a closed door executive session to discuss their attorney's letter regarding pending litigation involving the plaintiff. *See id.* at 378. The plaintiff in the case had alleged that the condominium association violated the Fair Housing Act by refusing to provide accessible, handicapped parking and that he had been the victim of retaliation and harassment as a result of his attempts to gain accessible parking. *See id.* at 374.

The court noted first that underlying facts were not protected. *See id.* at 378. It then stated, relying on *Larson,* that "[d]iscussions which did not implicate legal advice relating to pending or anticipated litigations were not privileged from discovery." *Id.* at 379. Expanding on this statement, the court stated that

> discussions by members of the San Tropai [condominium] board encompassing business strategy and decision-making are not privileged, regardless of whether or not the business decisions may have a legal impact on San Tropai. However, conversations among the board members discussing their attorney's legal advice about potential litigation risk and legal strategy are privileged under the attorney-client privilege.

*Id.* at 379–80. The court then provided examples of questions that pertained to factual information underlying the plaintiff's claim or to information not involving privileged legal advice.

> What topics were discussed in executive session? Why was [the plaintiff] denied a handicapped parking space? What factual information did the association consider? What parking alternatives, if any, did the association consider? Did any Board member reveal any personal animus toward [the plaintiff]? How did the Board vote? Were any members in favor of granting [the plaintiff] a parking space? What business and economic factors did the board consider in its decision to deny a parking space to [the plaintiff]?

*Id.* at 380.

The Court finds that the proper analysis in this situation is to examine the "primary purpose" of the communication. *Rice, supra.* The attorney-client privilege should be narrowly construed especially where important constitutional interests and a public entity which is accountable to the citizenry are involved. Thus, the burden to prove that primary purpose was legal not business advice is on the City.

Accordingly, the key question for the instant case is whether any particular communication made during the closed sessions of the City Council, with legal counsel present, was related primarily to the seeking of legal advice. If so, then that communication is privileged. *Cf. Newport,* 200 F.R.D. at 634 (discussing packet of information prepared for closed session of county board; stating that "[t]o the extent that the information at issue here is County Counsel's analysis of issues for presentation to the Board at closed session where the Board makes policy and strategy choices on litigation, the information is attorney work-product"). However, if the communication was directed primarily to informing the substantive decision to approve Condition 13(b), then it is not privileged.

The Court holds that inquiry into the substantive decisionmaking of the City Council members regarding Condition 13(b), even if it had a legal impact, may be permissible. As noted above, the line that

must be drawn (on which the City bears the burden) is one that separates advice on substantive decisionmaking—akin to business advice to take certain business action such as terminating an employee or providing accessible parking—from legal advice pertaining, *e.g.*, to litigation strategy decision. To be privileged, as stated above, legal advice must predominate the communication. Questions, therefore, will be permitted as to, for example, whether City Council members saw a letter from NP regardless of whether that letter from NP was passed along to the Council by the City's counsel.[5] Members may be asked what Lee Diaz (of the Planning Department staff) told them as to the purpose of Condition 13(b) even if counsel was present at such meeting. They may also be asked what was explained to them as to the purpose of the condition which informed how they would vote as a Council member. In contrast, advice about, *e.g.*, legal strategy in a pending suit with NP would be privileged. As a practical matter, while the Court provides this general guidance for the parties, it will need to rule on the assertion of the attorney-client privilege on a case-by-case basis during trial.

### III. *CONCLUSION*

Accordingly, the Court concludes that the deliberative process privilege is applicable, that it is overcome under the circumstances, and that NP may question the City Council members about objective evidence about the decisionmaking process. The Court also concludes that, depending on the circumstances, the attorney-client privilege may be applicable and it will

make the necessary case-by-case rulings on the assertion of the privilege at trial.

IT IS SO ORDERED.

---

**5.** The Court notes that the mere "passing along" of a letter is not a confidential communication.