DECISION
Before the Court for decision is a Motion brought by the Defendant, The Sherwin-Williams Company (Sherwin-Williams), seeking a Protective Order to Prohibit Disclosure or Use of Privileged Documents (Motion for Protective Order) and the Plaintiffs (the State) objection thereto. Sherwin-Williams, through counsel, requests that the Court take the following action: (1) strike Exhibit 16 and all discussion of it or its contents from the State's Supplemental Memorandum In Opposition To Defendants' Motion For Costs (Supplemental Memorandum) and compel destruction of all copies of that memorandum and Exhibit 16 in the possession of any party or its counsel; (2) order that all parties and their attorneys, other than Sherwin-Williams, not disclose or use in any manner the document and information contained in Exhibit 16 of the State's Supplemental Memorandum; (3) order that any other person to whom a copy of the Supplemental Memorandum and Exhibit 16 was given, destroy his, her, their or its copies and not disclose or use the document or information contained in Exhibit 16; (4) compel the State and its attorneys to return the document contained in Exhibit 16 and identify and return all other Sherwin-Williams privileged documents that it or its counsel have in their possession, custody, or control and that were obtained outside discovery; and (5) permit *Page 2 
Sherwin-Williams to conduct limited discovery into the circumstances surrounding the State and its attorneys' acquisition of Sherwin-Williams' privileged documents outside of discovery. The State objects to Sherwin-Williams's motion and maintains that Exhibit 16 is not a privileged document and is thus not protected from disclosure either by the attorney-client privilege or the work product doctrine.
 I Facts and Travel
The pertinent facts giving rise to the instant dispute are presented herein. On September 24, 2008, the State filed its Supplemental Memorandum on the issue of costs, which is currently pending before the Court. In its Supplemental Memorandum, the State put forth a number of factors for the Court to consider in deciding whether to impose additional costs on the State. In particular, one of these factors addresses why Sherwin-Williams should not be considered a "needy defendant." See State's Supplemental Memorandum In Opposition To Defendants' Motion For Costs 19. In support of its argument that the Defendants are not suffering any financial hardship due to their defense in the lead paint litigation, the State attached Exhibit 16 to the Supplemental Memorandum and discussed its contents on pages 23-24.Id. 23-24.[1] Specifically, Exhibit 16 is part of a PowerPoint presentation that was made by Associate General Counsel for Sherwin-Williams (John Lebold) to the Sherwin-Williams Board of Directors on the issue of potentially available insurance to recover lead litigation related fees and expenses. (Lebold Aff. ¶ 2); see also 10/1/08 Hr'g Tr. 3.
On September 25, 2008, counsel for Sherwin-Williams received a copy of the State's Supplemental Memorandum. After reviewing the filing, Sherwin-Williams took *Page 3 
particular issue with the State's inclusion of Exhibit 16 and discussion of its contents. Sherwin-Williams contends that Exhibit 16 was prepared by Mr. Lebold at the request of the Board of Directors and was used to provide legal advice to the Board on potentially available insurance coverage under the terms of existing insurance policies. (Lebold Aff If 2.) Sherwin-Williams claims that Exhibit 16 contains Mr. Lebold's evaluations and opinions as in-house counsel and was used to convey legal advice and respond to questions presented by the Board of Directors and management at the October 20, 2004 Board of Directors meeting. Id. If 3. As a result, Sherwin-Williams vehemently argues that the State has no right to use Exhibit 16 in this litigation because it is a privileged document protected both by the attorney-client privilege and the work product doctrine. See id-If 4; see also 10/1/08 Hr'g Tr. 3.
Furthermore, the facts surrounding the State's acquisition of Exhibit 16 have raised some serious concerns for Sherwin-Williams. (10/1/08 Hr'g Tr. 2-3.) First, Exhibit 16 appears to be one page of a 34-page document that was faxed on September 12, 2006 from a FedEx Kinkos located near Akron, Ohio. (Lebold Aff. If 8); see also 10/1/08 Hr'g Tr. 2-3. Sherwin-Williams asserts that it has not been able to ascertain the contents of the other 33 pages included with Exhibit 16 in the fax. (Lebold Aff. If 8.) In addition, after conducting an investigation into the matter, Mr. Lebold concluded that authorization to send the fax was not given to any Sherwin-Williams employee. Id. Consequently, despite its efforts, Sherwin-Williams has been unable to identify either the sender or the recipient of the 34-page fax. Id.
Secondly, according to Mr. Lebold, Exhibit 16 was not disseminated to any individual or entity besides the Sherwin-Williams Board of Directors, its executive *Page 4 
management, and its attorneys. Id.]} 5,]f 7. Additionally, Sherwin-Williams maintains that to the best of its knowledge Exhibit 16 was never produced — intentionally or inadvertently — in connection with discovery in the lead litigation matter. Id.]f 6; see also 10/1/08 Hr'g Tr. 4. In support of this contention, Mr. Lebold alleges that Exhibit 16 contains no production marking, even though every document produced by Sherwin-Williams in the lead litigation matter contains a unique production marking in the form of a bates number. (Lebold Aff]f 6.) In short, Sherwin-Williams insists that it is completely unaware as to how the State came into possession of Exhibit 16 and whether the State has received any other privileged documents in an unauthorized manner from the same or any other source. (Moore Aff.]f 5(c)).
Against this backdrop, counsel for Sherwin-Williams contacted State's counsel on September 26, 2008 in an attempt to reach an amicable resolution to the situation and learn how the State obtained Exhibit 16, as well as any other privileged documents. Sherwin-Williams also sent a confirming letter the same day, requesting that the State take the following action: (a) withdraw Exhibit 16, or at the very least, agree to place it immediately under seal, (b) inform Sherwin-Williams as to how the State came into possession of Exhibit 16, and (c) identify all other documents in the State's possession associated with the September 12, 2006 fax, as well as any other privileged Sherwin-Williams documents the State may have. (9/26/08 Letter.)
In response to the requests made by Sherwin-Williams, State's counsel sent a reply letter on September 29, 2008. However, the letter was unresponsive to Sherwin-Williams' questions concerning how the State received Exhibit 16 and whether the State had other privileged Sherwin-Williams documents in its possession. See State's *Page 5 
9/29/2008 Letter. Furthermore, the State refused to unconditionally withdraw the allegedly privileged document as requested by Sherwin-Williams. Id. As an alternative, the State indicated that it would be willing to withdraw Exhibit 16 completely and substitute it with a stipulation from Sherwin-Williams that their lead litigation expenses were in fact covered by insurance. Id. The State also indicated that it would be willing to temporarily seal the Supplemental Memorandum, including Exhibit 16, while the parties worked out such a stipulation. Id.
Upon receiving the State's reply, Sherwin-Williams immediately sent a follow up letter that same day requesting answers to its questions. (Sherwin-Williams's 9/29/08 Letter.) On the following day, September 30, 2008, the State countered by emailing a draft stipulation to Sherwin-Williams' counsel for review. (Defendant's Motion For Protective Order To Prohibit Disclosure Or Use Of Privileged Documents, Exhibit E.) However, the State again refrained from answering any of the questions Sherwin-Williams had previously put forth. Id. In response to the proposed draft stipulation, Sherwin-Williams sent an email inquiring once more as to whether the State intended to answer its questions. When the State replied that it did not intend to answer Sherwin-Williams' questions and that the parties should instead focus on working out an appropriate stipulation, Sherwin-Williams proceeded to file this Motion for Protective Order with the Court.
 II Protective Order
Rhode Island Superior Court Rule of Civil Procedure 26(c) provides the Court with authority to issue protective orders regarding information obtained or sought through the discovery process. Super. R. Civ. P. Rule 26(c). In the present matter, *Page 6 
however, it is undisputed by the parties that Exhibit 16 was obtainedindependent of the formal discovery process.[2] See 10/1/2008 Hr'g Tr. 4 (emphasis added). Rhode Island cases dealing with Rule 26(c) provide little guidance in determining whether the Court's authority to issue protective orders pursuant to Rule 26(c) extends to information obtained outside discovery. However, despite minor differences in language, Super. R. Civ. P. Rule 26(c) is substantially similar to its federal counterpart, Fed.R.Civ.P. 26(c), in both substance and effect. Thus, the Court will look to its federal judicial brethren for guidance. SeeSmith v. Johns-Manville Corp., 489 A.2d 336, 339 (R.I. 1985) ("This court has stated previously that where the federal rule and our state rule of procedure are substantially similar, we will look to the federal courts for guidance or interpretation of our own rule."); see alsoFireman's Fund Ins. Co. v. McAlpine, 391 A.2d 84, 88 (R.I. 1978).
Such guidance from the federal courts resoundingly indicates that the power to grant protective orders pursuant to Rule 26(c) can be exercised only in conjunction with information or documents obtained or sought through formal discovery. Public Citizen Health Research Group v. Foodand Drug Admin.. 953 F.Supp. 400, 404 (D.D.C. 1996) ("The power to grant a protective order under this rule [Fed.R.Civ.P. 26] must be exercised in conjunction with information gained or sought through discovery."); see also Shanahan v. Vallat 2006 WL 3317018, at *1 (S.D.N.Y. 2006); S.E.C. v. Brady, 238 F.R.D. 429, 445 (N.D. Tex. 2006);Favemi v. Hambrecht and Quist, Inc., 174 F.R.D. 319, 325 (S.D.N.Y. 1997); Smith v. Armour Pharmaceutical Co., 838 F.Supp. 1573, 1578
(S.D. Fla. 1993). *Page 7 
The federal courts have specified that when issuing protective orders concerning information obtained outside the formal discovery process — as in the instant matter — a court derives its authority from the inherent equitable power to control and preserve the integrity of its judicial proceedings. In re Shell Oil Refinery, 143 F.R.D. 105, 109
(E.D. La. 1992) ("Because Rule 26 does not authorize a district court to issue protective orders with respect to documents obtained through means other than the court's discovery processes, the Court's . . . Order for production should reflect that it was entered pursuant to the Court's inherent authority to control and preserve the integrity of its judicial proceedings."); see also Brady, 238 F.R.D. at 445; Herrera v. ClipperGroup, L.P., 1998 WL 229499, at *1 (S.D.N.Y. 1998); In re SoutheastBanking Corp. Securities and Loan Loss, 212 B.R. 386, 395 (S.D. Fla. 1997); Favemi, 174 F.R.D. at 325; Public Citizen Health ResearchGroup, 953 F.Supp. at 404; see also Clarke v. Morsilli, 723 A.2d 785,786 (R.I. 1998) ("Moreover, it is well-established that this Court under its general supervisory powers can exercise its inherent power to fashion an appropriate remedy to serve the ends of justice.");Vincent v. Musone, 574 A.2d 1234, 1235 (R.I. 1990).[3] According to these precepts, the Court's power to issue a protective order in this matter and provide Sherwin-Williams with the relief it requests, if at all, emanates from the Court's inherent equitable authority to manage and protect the integrity of its judicial proceedings and fashion remedies that promote justice.[4] See In re Shell Oil Refinery, *Page 8 143 F.R.D. at 109; Brady, 238 F.R.D. at 445; Herrera,1998 WL 229499, at *1; In re Southeast Banking Corp. Securities and Loan Loss,212 B.R. at 395; Fayemi, 174 F.R.D. at 325; Public Citizen Health ResearchGroup, 953 F.Supp. at 404; see also Clarke v. Morsilli, 723 A.2d at 786;Vincent v. Musone, 574 A.2d at 1235.
 Ill Analysis A Attorney-Client Privilege
In the instant matter, since the relief Sherwin-Williams seeks is essentially predicated upon classification of Exhibit 16 as a privileged document, a threshold issue is whether Exhibit 16 is protected by the attorney client privilege and/or the work product doctrine.[5]
According to the Advisory Committee's Notes on Rhode Island Rule of Evidence 501(3), Rhode Island recognizes the common law privilege for communications between an attorney and a client for the purpose of obtaining legal services. R.I. Rules of Evidence, Art. V, Rule 501(3) Advisory Committee Notes. Under common law, the attorney-client privilege provides that "communications made by a client to his attorney for the purpose of seeking professional advice, as well as the responses by the attorney to such inquiries, are privileged communications not subject to disclosure." Mortgage Guarantee Title Co. v. Cunha,745 A.2d 156, 158-59 (R.I. 2000). It is well-established in this jurisdiction that "the attorney-client privilege protects from disclosure only the confidential communications between a client and his or her attorney." State v. von Bulow, 475 A.2d 995, 1004 (R.I. 1984) (emphasis added). *Page 9 
In determining whether a communication is protected by the attorney-client privilege, it is imperative that "the privilege be narrowly construed because it limits the full disclosure of the truth."Callahan v. Nystedt 641 A.2d 58, 61 (R.I. 1994). Additionally, "the mere existence of a relationship between an attorney and client does not raise a presumption of confidentiality." Id. As a result, in order to properly invoke the attorney-client privilege, the following elements must be established:
 (1) the asserted holder of the privilege is or sought to become a client;
 (2) the person to whom the communication was made (a) is [a] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;
 (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
 (4) the privilege has been (a) claimed and (b) not waived by the client."
von Bulow, 475 A.2d at 1004-05. Further, the burden of establishing the existence of the attorney-client privilege rests with the party seeking to prevent disclosure of protected information. Pastore v. Samson,900 A.2d 1067, 1084 (R.I. 2006) ("The burden of establishing these elements is on the party advancing the privilege.").
A communication is protected under the attorney-client privilege only when "all of the elements, as set forth above, are present." vonBulow, 475 A.2d at 1005. Therefore, in order properly to invoke the attorney-client privilege, one essential element that must be proved is that the privilege has not been waived. Id. Generally, confidential attorney-client communications are protected unless the privilege has been explicitly or implicitly *Page 10 
waived by the client. State v. Grayhurst 852 A.2d 491, 512 (R.I. 2004). With respect to such waiver, the attorney-client privilege may be "waived through disclosure of a confidential communication to a third party." Rosati v. Kuzman, 660 A.2d 263, 266 (R.I. 1995). However, it is not necessary that actual privileged communications or documents reflecting such communications be disclosed to effect waiver of the privilege. See von Bulow, 475 A.2d at 1007 ("A disclosure of, or even merely an assertion about, the communication may effect a waiver of privilege not only as to that communication, but also as to other communications made . . . at other times about the same subject.").
Furthermore, though the Rhode Island Supreme Court has not specifically addressed the issue, a number of federal courts have held that greater scrutiny is applied to determine whether the advice of in-house counsel is truly legal in nature or more akin to general business advice that might come from any high ranking person within an organization. See U.S. v. Chevron Texaco Corp.. 241 F. Supp.2d 1065,1076 (N.D. Ca. 2001) ("With respect to internal communications involving in-house counsel, Chevron must make a `clear showing' that the `speaker' made the communications for the purpose of obtaining or providinglegal advice.") (emphasis added); see also North Pacifica, LLC v. Cityof Pacifica, 274 F.Supp.2d 1118, 1127 (N.D. Ca. 2003) (reiterating that when dealing with communications involving both business and legal advice, in order for privilege to attach, a court must determine the "primary purpose" of the communication). Only where the advice is predominantly legal does the privilege apply to internal communications involving in-house corporate counsel. Philip Morris, Inc., 2004 U.S. Dist. LEXIS 27026, at *16 (D.D.C. June 25, 2004) ("[W]here business and legal advice are inextricably intertwined, the legal advice must predominate over the business advice, *Page 11 
and not be merely incidental, for the communications to be protected by the attorney-client privilege."); see also Chevron Texaco Corp.,241 F. Supp.2d at 1076; North Pacifica, LLC, 274 F.Supp.2d at 1127. Mindful of these principles, the Court now seeks to determine whether Exhibit 16 is shielded from discovery by the protective shroud of attorney-client privilege.
Applying the elements of the privilege to the instant matter, the Court finds that an attorney-client relationship existed between Mr. Lebold and Sherwin-Williams at the time Exhibit 16 was created. According to Mr. Lebold's sworn affidavit, his official position within the Sherwin-Williams Legal Department is "Associate General Counsel-Complex Litigation." (Lebold Aff]f 1.) Based on Mr. Lebold's position as Associate General Counsel, Sherwin-Williams is essentially Mr. Lebold's exclusive client and part of Mr. Lebold's inherent professional duties as corporate counsel is to provide assistance to the Board of Directors and management upon request.[6] Id.
Next, concerning the second element of the privilege, as represented by Sherwin-Williams, Exhibit 16 was created by Mr. Lebold in response to a request made by the *Page 12 
organization's Board of Directors and management for information on potentially available lead litigation insurance coverage under its current insurance policies. Id.]} 2. It is unclear, however, whether Mr. Lebold was acting in his official capacity as Associate General Counsel for Sherwin-Williams and therefore "acting as a lawyer" when he prepared Exhibit 16 in response to the request; or whether his actions were more akin to that of a business advisor. Based upon the facial appearance of Exhibit 16, the document appears to be merely a collection of numbers and statistics, lacking any legal opinions or conclusions. Thus, despite the claims Sherwin-Williams has made about the document and the actions Mr. Lebold undertook to create it, there remains a genuine question as to whether Mr. Lebold was actually acting as an attorney in connection with the communication at issue.
The third essential element that must be satisfied in order for the privilege to attach is that the primary purpose for the communication was to provide a legal opinion, legal services, or assistance in some legal proceeding.[7] von Bulow, 475 A.2d at 1004-05. In evaluating whether the third element of the attorney-client privilege has been satisfied, the Court's primary focus is on the purpose for which Exhibit 16 was created. As previously stated, the Rhode Island Supreme Court has held that only communications made for the purpose of securing primarily either an opinion on law, legal services, or assistance in some legal proceeding qualify for protection under the attorney-client privilege,von Bulow, 475 A.2d at 1004-05. Moreover, with respect to internal communications involving in-house corporate counsel, only where the advice is *Page 13 
predominantly legal does the privilege apply. Philip Morris, Inc., 2004 U.S. Dist. LEXIS 27026, at * 16; see also Chevron Texaco Corp.,241 F. Supp.2d at 1076; North Pacifica, LLC, 274F.Supp.2datll27.
In the case at bar, the creation of Exhibit 16 was apparently motivated by Sherwin-Williams' desire to determine how much lead litigation insurance protection it had under the company's existing insurance policies. See Lebold Aff]fl| 1-2. Sherwin-Williams called on its Associate General Counsel, Mr. Lebold, to assimilate this information and present his findings to the Board of Directors and management at the October 20, 2004 Board of Directors Meeting. Id.]f 2. In an effort to clarify both the contents and character of Exhibit 16, Sherwin-Williams presented the Court with evidence that Exhibit 16 is not just a document consisting of purely statistical data. See Lebold Aff.]f 3. By way of the sworn affidavit of John Lebold, Sherwin-Williams maintains that Exhibit 16 was created primarily for the purpose of rendering legal advice and contains Mr. Lebold's evaluations and opinions as corporate in-house counsel to Sherwin-Williams concerning the company's level of lead litigation insurance protection. Id. Additionally, Sherwin-Williams argues that in performing this task, Mr. Lebold was not advising Sherwin-Williams on the consequences or details of a potential business transaction; he was providing the Board of Directors and management with information and advice concerning a significant ongoing legal issue confronting the organization. Id. ¶¶ 1-3; see also 10/1/08 Hr'g Tr. 3-4.
Conversely, the State asserts that Exhibit 16 contains only insurance figures and factual statistics and is essentially bereft of any legal analysis, interpretation, or opinion. See 10/1/08 Hr'g Tr. 20, 23, 35-36. Further, the State suggests that while Mr. Lebold *Page 14 
may have provided the Board of Directors and management with his legal opinions and conclusions during his presentation at the October 20, 2004 Board of Directors meeting, upon an objective facial analysis of Exhibit 16, there appears to be nothing in the document representing any sort of legal opinion or conclusion — just numbers and insurance statistics. Id. 35-36. Moreover, the Court hastens to add that as a practical matter, on its face, Exhibit 16 does in fact appear to be nothing more than a collection of numbers and objective statistical data — devoid of any legal advice, analysis, or interpretation.[8]
By virtue of Mr. Lebold's sworn affidavit, the Court acknowledges that Sherwin-Williams has presented evidence suggesting that Exhibit 16 was, in fact, created primarily for the purpose of rendering a legal opinion or providing legal services. However, the State's arguments, together with the actual appearance of Exhibit 16, seem to belie the proposition that Exhibit 16 was created primarily for a legal purpose and is privileged on its face. Furthermore, due to the unusual nature of permitting discovery at such an advanced stage of litigation — as requested by Sherwin-Williams — the Court deems it necessary to further substantiate Sherwin-Williams' claims before making a final determination on whether Exhibit 16 qualifies for protection under the attorney-client privilege.[9] To that end, pursuant to the Court's inherent equitable powers, the *Page 15 
Court will provide the State with an opportunity to question, through limited discovery, the assertions made by Sherwin-Williams in Mr. Lebold's sworn affidavit and otherwise regarding the creation, contents, use, and purpose of Exhibit 16 before deciding whether the document is privileged. Additionally, with regard to the issue of waiver, the Court will refrain from making a final determination on this matter until: (a) the Court is adequately satisfied that Exhibit 16 is subject to protection pursuant to the attorney-client privilege; and (b) further information concerning the State's acquisition thereof is developed.[10] [11]
 B The Work Product Doctrine
In addition to the attorney-client privilege, Sherwin-Williams collaterally argues that Exhibit 16 is also protected from disclosure by the work product doctrine. Under the work product doctrine, "[a] party shall not require a deponent to produce or submit for inspection any writing obtained or prepared by the adverse party, his attorney. . . in anticipation of litigation . . . unless . . . a denial of production or inspection will result in an injustice or undue hardship. . . ." Cabral v. Arruda, 556 A.2d 47, 49 (R.I. 1989) (emphasis added). Moreover, the Rhode Island Supreme Court has articulated a test to determine whether an item is work product: "in light of the nature of the document or *Page 16 
tangible material and the facts of the case, the document can be said to have been prepared or obtained because of the prospect of litigation, by or for an adverse party or its agent." Id.
In Rhode Island, the work product doctrine is codified in Super. R. Civ. P. 26(b)(3). However, because Exhibit 16 was acquired outside of the formal discovery process, the Court derives its power to act in this matter from the inherent equitable power to control and preserve the integrity of its proceedings — not Rule 26. See In re Shell OilRefinery, 143 F.R.D. at 109; Brady, 238 F.R.D. at 445;Herrera, 1998 WL 229499, at *1; In re Southeast Banking Corp. Securitiesand Loan Loss, 212 B.R. at 395; Favemi, 174 F.R.D. at 325; PublicCitizen Health Research Group, 953 F.Supp. at 404; see also Clarke v.Morsilli, 723 A.2d at 786; Vincent v. Musone, 574 A.2d at 1235. Thus, while the Court will look to Rule 26(b)(3) for guidance on the applicable work product standard, any action undertaken by the Court shall be done pursuant to its inherent equitable powers.
The work product doctrine, enunciated in Super. R. Civ. P. 26(b)(3), reads as follows:
 "[a] party may obtain discovery of documents and tangible things otherwise discoverable under subdivisions (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative * * * only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Super. R. Civ. P. 26(b)(3). *Page 17 
Rule 26(b)(3) acknowledges that there are two distinct categories of work product that necessitate different degrees of protection during the discovery process. Crowe Countryside Realty Associates, Co., LLC v.Novare Engineers, 891 A.2d 838, 842 (R.I. 2006); see also Fireman's FundInsurance Co., 391 A.2d at 87 (describing different types of work product and corresponding degrees of protection afforded each distinct category). The first type of work product is referred to as "ordinary" work product and consists of materials prepared in anticipation of litigation. Crowe Countryside Realty Associates, Co., LLC,891 A.2d at 842; see also Data General Corp. v. Grumman Systems Support Corp.,139 F.R.D. 556, 560-61 (D. Mass. 1991) (recognizing "ordinary" work product as a distinct category). "Ordinary" work product is afforded qualified immunity from discovery, meaning such material is not discoverable unless the party seeking discovery demonstrates a substantial need for the materials in preparation of the party's case and an inability to obtain the substantial equivalent by other means absent undue hardship.See Super. R. Civ. P. 26(b)(3); see also Crowe Countryside RealtyAssociates, Co., LLC, 891 A.2d at 842; Fireman's Fund InsuranceCo., 391 A.2d at 87; Cabral, 556 A.2d at 49-50; Data General Corp.,139 F.R.D. at 560; Robert B. Kent et al., Rhode Island Civil and AppellateProcedure § 26:5 (2006).
With respect to the second sentence of 26(b)(3), Rhode Island courts are required to "protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Super. R. Civ. P. 26(b)(3); see also Crowe Countryside Realty Associates, Co.,LLC, 891 A.2d at 842. This second category of work product consisting of an attorney's mental impressions, conclusions, opinions, and legal theories is referred to as "opinion" work *Page 18 
product. See Bogosian v. Gulf Oil Corp., 738 F.2d 587, 593
(3rd Cir. 1984); see also Brady, 238 F.R.D. at 442;Crowe Countryside Realty Associates, Co., LLC, 891 A.2d at 842. Moreover, the Rhode Island Supreme Court has expressly stated that such work product is afforded absolute immunity from discovery. See Fireman'sFund Insurance Co., 391 A.2d at 87; see also Kent § 26:5; 1 Ronald J. Resmini, Rhode Island Civil Practice Procedure, § 546, at 407-08 (1996).
To the extent that Exhibit 16 does not qualify for protection under the attorney-client privilege, the document may be protected by the work product doctrine. Sherwin-Williams may invoke this claim of privilege, but only to the extent Exhibit 16 was prepared in anticipation oflitigation. Cabral, 556 A.2d at 49 (emphasis added). Further, upon adequate showing that the document was prepared in anticipation of litigation, the level of applicable work product protection — qualified or absolute — must be determined by properly characterizing Exhibit 16 as either "ordinary" work product or "opinion" work product.[12]
Concerning the threshold "in anticipation of litigation" prerequisite for protection under the work product doctrine, Sherwin-Williams contends that Exhibit 16 satisfies this requirement because the document was prepared by Mr. Lebold to assist the organization in an ongoing litigation matter. (10/1/08 Hr'g Tr. 3.) Additionally, Sherwin-Williams *Page 19 
maintains that Exhibit 16 qualifies for an absolute privilege from disclosure under the work product doctrine because the document contains the opinions, conclusions, and legal advice of Mr. Lebold regarding potentially available insurance coverage for lead litigation costs. (Lebold Aff.]f 2-3.) In rebuttal, the State again argues that the document does not portray any evidence of a mental impression or a legal conclusion. (10/1/08 Hr'g Tr. 35.) The State asserts that the document contains nothing more than business advice and objective factual information and lacks any legal interpretation or opinion. Id. 36.
The Court remains concerned about the apparent disconnect between Sherwin-Williams's characterization of Exhibit 16 and — as highlighted by the State — the facial appearance of the document itself. The Court has thus decided to allow the State to question the assertions made by Sherwin-Williams, concerning Exhibit 16, before deciding whether the communication in question is privileged. Consequently, in accordance with this Court's decision, the Court will also refrain from making a determination on whether Exhibit 16 qualifies for protection under the work product doctrine until after the State has concluded its inquiry.
 IV Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memorandum, the Court, in an effort to conclusively determine whether Exhibit 16 is a privileged document, will allow the State to conduct a limited inquiry into the assertions made by Sherwin-Williams in Mr. Lebold's sworn affidavit and otherwise regarding the creation, contents, use, and purpose of Exhibit 16. In conducting this limited discovery, the State will be permitted to pose written interrogatories and, upon *Page 20 
application to the Court showing good cause, may also be allowed to take deposition testimony. Upon conclusion of the State's inquiry, however, should the Court find that Exhibit 16 is a privileged document, the Court, pursuant to its inherent equitable powers, will permit Sherwin-Williams to investigate through written interrogatories exactly how the State obtained Exhibit 16 and what other privileged Sherwin-Williams documents, if any, the State may have in its possession.[13] Further, upon application to the Court showing good cause, Sherwin-Williams may also be permitted to take deposition testimony.
The Court directs counsel for Sherwin-Williams and the State to present an order consistent herewith that will provide a precise timetable for the presenting and answering of interrogatories, along with the taking of any depositions.[14] The discovery schedule(s) presented shall culminate in a formal hearing before the Court upon conclusion of discovery.
[1] The State's Supplemental Memorandum, along with Exhibit 16, is presently under seal per Court Order and will remain sealed pending further order of the Court.
[2] While conceding that Exhibit 16 was not obtained through discovery, the State has refused to reveal exactly how and from whom the document was acquired.
[3] Additionally, Appendix 1 of the Rhode Island Rules of Professional Conduct states that justices of Rhode Island courts "have the duty and authority to maintain control of courtroom proceedings, and to insure that all such proceedings are conducted in a civil manner." R.I. Rules of Prof. Conduct, App. 1, § E(2) (Standards for Professional Conduct Within the Rhode Island Judicial System).
[4] To clarify, Sherwin-Williams does not seek a protective order pursuant to Rule 26(c). To the contrary, Sherwin-Williams — acknowledging that Exhibit 16 was obtained outside of discovery — has argued in its memoranda that the Court should grant the protective order pursuant to its inherent authority and equitable powers.
[5] The Court hastens to add that this critical issue must first be conclusively resolved before the Court can attempt to craft an appropriate final resolution of this dispute.
[6] It should be noted that the attorney-client privilege has been held to apply to corporate in-house counsel. In U.S. v. United ShoeMachinery Corp., 89 F. Supp. 357, 360 (D.C. Mass. 1950), the court found that:
 "[T]he apparent factual differences between these house counsel and outside counsel are that the former are paid annual salaries, occupy offices in the corporation's buildings, and are employees rather than independent contractors. These are not sufficient differences to distinguish the two types of counsel for purposes of the attorney-client privilege. * * * The type of service performed by house counsel is substantially like that performed by many members of the large urban law firms. The distinction is chiefly that the house counsel gives advice to one regular client, the outside counsel to several clients."
Id. at 360; see also Shelton v. American Motors Corp., 805 F.2d 1323,1326 n. 3 (8th Cir. 1986) ("The parties do not dispute that a corporation's `in-house counsel' is afforded the same protection as `outside counsel' with respect to the work-product doctrine and the attorney-client privilege."); O'Brien v. Board of Education,86 F.R.D. 548, 549 (S.D.N.Y. 1980) (fact that document was authored by in-house counsel rather than by independent counsel was "of no significance");Valente v. PepsiCo. Inc., 68 F.R.D. 361, 367 (D. Del. 1975) (acknowledging application of attorney-client privilege to confidential communications made between in-house counsel and client).
[7] Additionally, if this element is satisfied and Exhibit 16 is considered a privileged communication, before Sherwin-Williams can properly invoke the protection of the attorney-client privilege, it must also be shown that the privilege has not been waived.
[8] Specifically, Exhibit 16 references the total lead litigation related fees and expenses Sherwin-Williams has incurred to date, the amount of those costs that have already been reimbursed by insurance, and the remaining lead litigation expenses that have not yet been reimbursed by insurance. (State's Supplemental Memorandum In Opposition To Defendants' Motion For Costs, Exhibit 16.)
[9] Among other things, in its prayer for relief, Sherwin-Williams asks that the State be required to answer the questions regarding Exhibit 16 put forth in both the September 26 and 29, 2008 letters sent from Sherwin-Williams to State's counsel. See 10/1/08 Hr'g Tr. 15-17. Further, following the answering of those questions, Sherwin-Williams requests that it be allowed to conduct limited discovery into the circumstances surrounding the State and its attorneys' acquisition of Exhibit 16, should the need arise. Id.
[10] At the present juncture, the State has not revealed how Exhibit 16 was acquired. Until the Court is apprised of the circumstances by which the State and its counsel actually obtained the document, the issue of waiver cannot be adequately examined.
[11] On the topic of waiver, Sherwin-Williams contends that to the best of its knowledge, it did not produce Exhibit 16 or the information contained in the document in any litigation. (Lebold Aff. U 6) (emphasis added). According to Mr. Lebold's affidavit, Exhibit 16 and its contents were not disseminated or disclosed beyond the Board of Directors, management, and counsel. Id. U 7. Sherwin-Williams stresses that in addition, neither the Board of Directors nor management authorized the disclosure of Exhibit 16 or the information therein. Id. Furthermore, Sherwin-Williams claims that copies of the Board of Directors' meeting minutes and presentations to the Board, such as Exhibit 16, are stored in a secure location at corporate headquarters with very limited access. Id.
[12] In the event Sherwin-Williams subsequently invokes the work product doctrine, if the Court finds that Exhibit 16 was prepared in anticipation of litigation and also contains Mr. Lebold's mental impressions, opinions, or conclusions, then the document will be deemed absolutely privileged from disclosure. Super. R. Civ. P. 26(b)(3);Fireman's Fund Insurance Co., 391 A.2d at 87; Kent § 26:5; Resmini,Rhode Island Civil Practice Procedure, § 546, 407-08 (1996). However, if the Court were to find that the document was prepared in anticipation of litigation, but does not contain Mr. Lebolds mental impressions, then Exhibit 16 will receive only a qualified privilege. See Super. R. Civ. P. 26(b)(3); Crowe Countryside Realty Associates. Co. . LLC.891 A.2d at 842; Fireman's Fund Insurance Co.. 391 A.2d at 87; Cabral.556 A.2d at 49-50; Kent § 26:5. In order to overcome a qualified privilege, the State would have the two-pronged burden of establishing substantial need for Exhibit 16 in preparation of the State's case and an inability to obtain the substantial equivalent by other means absent undue hardship. See Super. R. Civ. P. 26(b)(3); Crowe Countryside Realty Associates,Co., LLC, 891 A.2d at 842; Fireman's Fund Insurance Co., 391 A.2d at 87;Cabral, 556 A.2d at 49-50; Kent § 26:5.
[13] It should be noted that the scope of any such subsequent discovery conducted by Sherwin-Williams will be strictly limited to just the September 12, 2006, 34-page fax transmission of which Exhibit 16 was part.
[14] The Court strongly urges counsel for Sherwin-Williams and the State to prepare such an order jointly. If this cannot be accomplished, however, then each side will present competing orders to the Court, setting forth the requested information. *Page 1